Anthony ROGERS, Richard Morales, Ventura Calderon, Jr., Robert J. De-Leon, Rolando Cesar Garza, Robert A. Gearhart, Isidro Medina, Jr., Timothy L. Menchaca, Emilio M. Montes, Bruce R. Moore, Nathaniel Oakman, Mark James Olson, Antonio Rivas, Jeffrey J. Zavala, and George W. Randall, Plaintiffs,

v.

CITY OF SAN ANTONIO, TEXAS, Defendant.

Civil Action No. SA–99–CA–1110 OG.

United States District Court, W.D. Texas, San Antonio Division.

March 28, 2002.

Vick Putman, Putman & Putman, San Antonio, TX, pro se.

Martha Powell Owen, Wiseman, Durst, Owen & Colvin, P.C., Austin, TX, for Anthony Rogers, Richard Morales, Ventura Calderon, Jr., Andrew L. Almazan, Robert J. De Leon, Rolando Cesar Garza, Robert A. Gearhart, Isidro Medina, Jr., Timothy L. Menchaca, Emilio M. Montes, Bruce R. Moore, Nathaniel Oakman, Antonio Rivas, Jeffery J. Zavala, George W. Randall.

Cynthia Michelle Benedict, Fulbright & Jaworski, San Antonio, TX, William W. Morris, City Attorney's Office, San Antonio, TX, Xavier Rodriguez, Supreme Court of Texas, Austin, TX, Lucie Frost Webb, Fulbright & Jaworski, San Antonio, TX, Amy M. Eubanks, Office of the City Attorney, Litigation Division, San Antonio, TX, for City of San Antonio.

### MEMORANDUM OF DECISION AND ORDER

ORLANDO L. GARCIA, District Judge.

#### A.   Introduction

This is an action for declaratory, equitable, and injunctive relief brought by fifteen

military reservists who are currently (or retired from)[1] working for the City of San Antonio Fire Department.[2] They are assigned either to the Department's Firefighting division or to the Department's Emergency Medical Services (EMS) division.[3] They serve the country in a variety of branches of the United States military reserves and National Guard.[4] Through the filing of this lawsuit, plaintiffs challenge a number of the policies and practices of the City's Fire Department as being discriminatory under the provisions of the Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.* (2000). The challenged employment practices at issue concern, for instance, how military leave is excluded from the "twenty-seven" hour cap imposed on lost overtime, "bonus day" leave, "perfect attendance" leave, unscheduled overtime compensation and upgrading opportunities. In sum, plaintiffs argue the City, in implementing these employment practices, unlawfully discriminate against them by deeming them "absent" from work whenever they are on leave fulfilling their military reserve duties, as opposed to viewing them as "constructively present at work." Plaintiffs contend that the City's practices have resulted in disparate treatment discrimination on the basis of their military reserve status. Plaintiffs maintain they are not seeking preferential treatment, but rather, equal treatment with respect to the same employment benefits available to non-reservist employees.

This Order addresses the cross-motions for partial summary judgment on the question of liability under USERRA.[5] Earlier in the case, the parties agreed to bifurcate this legal issue from the damages question. According to the parties' amended joint-stipulated facts,[6] the material factual record of this case is largely undisputed.[7]

Having considered the legal arguments presented by both parties, the summary judgment record and the applicable law, the court finds that plaintiffs' motion for partial summary judgment (Docket Entry 56) is well-taken and should be **GRANTED,** with the exception of plaintiffs' claim for "loss of straight-time for hours worked," which would be dealt with during the damages phase of the case. Plaintiffs have met their burden of establishing that their military service was "a motivating factor" in the application of the City's practices and policies concerning overtime compensation and upgrading procedures, among others. In other words, the City's policies and procedures would not have disparately impacted the plaintiffs but for their military reserve status. While the City has argued that it has not intentional-

---

1. There is only one plaintiff, George W. Randall, who retired from the Fire Department on November 30, 2000. He was first employed by the Department on February 16, 1967 and continued his employment with the Department until his retirement. Plaintiffs' "Statement of Undisputed Facts," ¶ 13, attached as an Appendix to Plaintiffs' cross motion for partial summary judgment, Docket Entry 56.

2. Docket Entry 49.

3. Docket Entry 56, at 2.

4. *Id.*

5. Docket Entries 56 & 60.

6. Docket Entry 61.

7. In saying this, however, the court acknowledges the City's objections to the plaintiffs' "Statement of Undisputed Facts," provided as an Appendix to plaintiffs' cross-motion for summary judgment. Docket Entry 62, at 1–3. The City has also objected to some of plaintiffs' summary judgment exhibits. *Id.* at 3–6. These objections will be addressed later in this Order.

ly or purposefully singled out those employees who have military reserve duty such as the plaintiffs, the enactment and application of its policies and procedures concerning the employment benefits at issue in this case, does violate the rights afforded to these individuals under USERRA. Further, the City has failed to meet its burden to show that it would have taken the same actions, irrespective of the plaintiffs' military obligations. Consequently, and as set forth more fully below, the City's cross-motion for partial summary judgment (Docket Entry 60) will be **DENIED.**

### B. Jurisdiction

This court has jurisdiction over this action pursuant to 38 U.S.C. § 4323 and 28 U.S.C. § 1331.

### C. Issues Presented

1. Whether plaintiffs have established the City's actions are motivated by the plaintiffs' "membership" or obligation for service in the uniformed services?

2. Whether the City has affirmatively established that its actions "would have been taken" in the absence of such "membership" or obligation for service?

### D. Summary Judgment Standard

The issue of liability under USERRA has been presented to the court through cross-motions for partial summary judgment.[8] A party is entitled to summary judgment upon motion if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[9] Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment; the requirement is that there be no genuine issue of material fact.[10] A fact is material if it might affect the outcome of the lawsuit under the governing law.[11] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[12] Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[13]

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence

---

8. Docket Entries 56 & 60.

9. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Banc One Capital Partners Corp. v. Kneipper,* 67 F.3d 1187, 1198 (5th Cir. 1995); *Neff v. American Dairy Queen Corp.,* 58 F.3d 1063, 1065 (5th Cir.1995), *cert. denied,* 516 U.S. 1045, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996).

10. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

11. *Id.* at 248, 106 S.Ct. 2505. *See also Thomas v. LTV Corp.,* 39 F.3d 611, 616 (5th Cir. 1994).

12. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995); *MacMillan v. United States,* 46 F.3d 377, 380–81 (5th Cir.1995).

13. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *Kunin v. Feofanov,* 69 F.3d 59, 61 (5th Cir.1995); and *Banc One Capital Partners Corp.,* 67 F.3d at 1198.

of a genuine issue of material fact.[14] To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense, or if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[15] Regardless of whether the moving party accompanies its summary judgment motion with affidavits or other evidentiary materials, the motion must be granted if the evidence before the court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied.[16]

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate.[17] The nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings.[18] Rather, the nonmoving party's response must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing the existence of a genuine issue for trial.[19] When both parties move for summary judgment, as in this case, each party must carry its own burden as the movant for its motion and as the non-movant in response to the other party's motion.[20] All justifiable inferences must still be drawn in favor of the losing party.[21]

### 1. The City's Objections to Plaintiffs' Summary Judgment Evidence

The City has filed objections to certain exhibits attached to plaintiffs' cross-motion for summary judgment.[22] Specifically, the City objects to portions of paragraphs 55 and 62, and to the entirety of paragraphs 82–90 of plaintiffs' "Statement of Undisputed Facts," as being contradictory to the Joint Stipulated Facts and/or based on subjective beliefs rather than the objective summary judgment record. The City also raises objections to the affidavits of plaintiff Anthony Rogers and Richard Ozuna and to the "wholesale inclusion" of various depositions. Plaintiffs have filed a response to each one of the City's objections.[23]

As a preliminary matter, the court notes it has not relied on any of the objected evidence in entering this Order. The

---

14. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548; *Wise,* 58 F.3d at 195; *Burfield v. Brown, Moore, & Flint, Inc.,* 51 F.3d 583, 588 (5th Cir.1995).

15. *Edwards v. Aguillard,* 482 U.S. 578, 595 n. 16, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); and *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. 2548.

16. *Id.*

17. *Fields v. City of South Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

18. FED.R.CIV.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *State of Texas v. Thompson,* 70 F.3d 390, 393 (5th Cir.1995).

19. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548; *Fields,* 922 F.2d at 1187; *Neff v. American Dairy Queen Corp.,* 58 F.3d at 1065; *Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir.1995), *cert. denied,* 516 U.S. 818, 116 S.Ct. 75, 133 L.Ed.2d 35 (1995).

20. *See Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996).

21. *See Murphy Expl. & Prod. Co. v. Oryx Energy Co.,* 101 F.3d 670, 673 (Fed.Cir.1996).

22. Docket Entry 62.

23. Docket Entry 65.

court has only relied on the factual record undisputed by the parties.[24] The court, nevertheless, denies the City's objections in their entirety because they are based on the weight of the evidence and not on its admissibility.[25] Particularly, the court did not find it necessary to evaluate the individual merits of plaintiff Rogers' claim that he was purportedly denied upgrading and/or training opportunities because of his military reserve duties. That evidence is relevant to the damages question, but not to the legal issue of liability under USERRA.[26] Regarding the "wholesale" inclusion of various depositions, that objection is denied as plaintiffs have specifically identified the portions of the deposition testimony they rely on in support of their cross-motion for summary judgment.[27] For these reasons, and based on the arguments articulated by plaintiffs as to each of the objections raised by the City, the City's objections to certain exhibits attached to plaintiffs' summary judgment motion are *DENIED.*

### E. Analysis

■ From the outset, it should be noted that the parties fundamentally disagree with respect to the proper burden of proof applicable to discrimination cases under USERRA. Plaintiffs advocate that the proper burden of proof is the "but for" test as opposed to the burden-shifting analysis used in traditional Title VII cases, and the one relied upon by the City.[28] The parties also disagree with respect to which USERRA provision governs the challenged employment practices at issue in this case. While plaintiffs rely on the broad provision of the statute prohibiting discrimination in employment rights, pay and benefits, 38 U.S.C. § 4311(a–c), the City maintains the controlling provision is § 4316 because the benefits at issue are seniority-based.[29] The correct position on these critical issues sets the stage for who will prevail in this case. The court finds that plaintiffs' position on both issues is correct.

### 1. Claims under USERRA

In 1994, Congress enacted USERRA which prohibits employment discrimination on the basis of military service and provides a private right of action for enforcement of rights under the Act.[30] Section 4301 describes the goals of USERRA as follows:

(1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;

(2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and

(3) to prohibit discrimination against persons because of their service in the

---

24. Docket Entry 56, Plaintiffs' Appendix and docket entry 61.

25. Docket Entry 62, at Section A, ¶¶ 4–5 and Section B, ¶ 1.

26. *See* discussion, at 845–46, *infra.*

27. Docket Entry 65, at ¶ D.

28. Docket Entry 56, at 5–6, Docket Entry 60, at 2, and Docket Entry 64, at 2–5.

29. Docket Entry 56, at 8–9, Docket Entry 60, at 6–7 and Docket Entry 64, at 5–6.

30. 38 U.S.C. § 4323. USERRA replaced the Veterans' Reemployment Rights Act ("VRRA") on October 13, 1994.

uniformed services.[31]

As reflected in § 4301, USERRA prohibits discrimination against military personnel on the basis of their military service and attempts to minimize the disadvantages to their civilian careers as a result of such service.[32]

According to Section 4311(b) of the Act "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person . . . has exercised a right provided for in this chapter."[33] In that regard, section 4311(a) provides that: "[a] person who is a member of [. . .] a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or *any benefit of employment* by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."[34] The term "benefit of employment" is broadly defined.[35] It includes "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement, or an employer policy, plan, or practice and includes [. . .] bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."[36]

Significantly, Section 4311(c)(1) of the Act sets forth the parties' respective burdens of proof:

An employer shall be considered to have engaged in actions prohibited under subsection (a) [of USERRA], if the person's membership, application for membership, service, application for service, or obligation to serve in the uniformed services is *a motivating factor* in the employer's action, *unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.*[37]

▮▮▮▮ Contrary to the City's position in this case, the decision rendered last year by the Federal Circuit Court in *Sheehan v. Department of the Navy*,[38] expressly stated that "[t]he procedural framework and evidentiary burdens set out in § 4311 . . . are *different* from those in discrimination cases under Title VII. . . ."[39] Instead, the proper test for determining whether the Act has been violated is the so-called "but for" test, in which the employee is required to make an initial showing that his military service is at least " '*a* motivating or substantial factor in the employer's action,' upon which the employer must then prove, by a preponderance of the evidence, that the action would have been taken despite the protected status."[40] The term " 'motivating factor' means that if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military po-

---

**31.** 38 U.S.C. § 4301.

**32.** *See Curby v. Archon,* 216 F.3d 549, 556 (6th Cir.2000).

**33.** 38 U.S.C. § 4311(b).

**34.** § 431(a) (Emphasis added).

**35.** *See Yates v. Merit Systems Protection Board,* 145 F.3d 1480, 1483 (Fed.Cir.1998).

**36.** § 4303(2).

**37.** § 4311(c)(1) (Emphasis added).

**38.** 240 F.3d 1009 (Fed.Cir.2001).

**39.** *Id.* at 1014 (Emphasis added).

**40.** *Id.See also* 38 U.S.C. § 4311(c) (Emphasis added).

sition or related obligations." [41] In other words, a plaintiff's military position and related obligations would be a motivating factor if the employer "relied upon, took into account, considered, or conditioned its decision on [the employee's] military-related absence." [42]

In order to avail itself of the affirmative defense available under the Act, the employer must do more than "merely showing that at the time of the decision it was motivated only in part by a legitimate reason." [43] Rather, the employer must show, by a preponderance of the evidence, "that its legitimate reason, standing alone, would have induced it to make the same decision." [44] In that regard, the court in *Sheehan* explains, that "[t]his applies to both so-called 'dual [or mixed] motive' cases (in which the employer defends on the ground, that, even if an invalid reason played a part in the adverse action, the same action would have been taken in the absence of the invalid reason) and so-called 'pretext' cases (in which the [employer] defends on the ground that it acted only for a valid reason)." [45] This is the burden

of proof analysis used by at least one district court within the Fifth Circuit, and the one followed in this case. [46]

Finally, it should be noted that Section 4311 is a congressional response to the United States Supreme Court decision in *Monroe v. Standard Oil Co.* [47] In that case, the Court held that USERRA's antecedent, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, "was enacted for the significant purpose of protecting the employee/reservist against discrimination like discharge and demotion, motivated *solely* by reserve status." [48] Congress amended the statute in 1994 to provide that a violation occurs when a person's membership in the uniformed services is *a motivating factor*, even if not the sole factor. [49] "Stated otherwise, Congress intended to lessen, but not eliminate, a veteran's [or reservist's] obligation to show that the employer's adverse decision was related to his service in the armed forces." [50] Thus, to the extent that the City follows the "sole cause" standard enunciated in *Monroe*, that standard has been repealed by § 4311

---

41. *Robinson v. Morris Moore Chevrolet–Buick*, 974 F.Supp. 571, 575 (E.D.Tex.1997) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

42. *Id.* at 576

43. *Id.*

44. *Id.*

45. 240 F.3d at 1014. *See also Robinson*, 974 F.Supp. at 576.

46. *Id.* *See also Gummo v. Village of Depew*, 75 F.3d 98, 106 (2d Cir.), *cert. denied*, 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996); and *Curby*, 216 F.3d at 556.

47. 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981).

48. *Id.* at 559, 101 S.Ct. 2510 (Emphasis added). *See also Pignato v. American Trans Air, Inc.*, 14 F.3d 342 (7th Cir.1994) (holding that in order to establish employer liability in mixed-motive cases, the impermissible motive must be the controlling reason for the adverse action), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994).

49. *See Newport v. Ford Motor Co.*, 91 F.3d 1164, 1167 (8th Cir.1996) (noting that USERRA was enacted in response to *Monroe* and changed *Monroe's* "sole cause" standard to a "motivating factor" standard).

50. *Id.See also Gummo*, 75 F.3d at 106 (where the court in expressly rejecting *Monroe*, opted instead to evaluate § 4311(b) (formerly, § 2021(b)(3)) by using the scheme of burden of proof allocations approved by the United States Supreme Court in *NLRB v. Transporta-*

of the Act and is no longer applicable.[51] It should be emphasized that USERRA was "designed to improve, rather than replace the VRRA," [52] and it is "to be broadly construed and strictly enforced." [53]

Since the plaintiffs challenge a number of the City's policies and practices, the existence of which are not in dispute, the application of the "but for" test in this case differs from the typical adverse employment action case. While the City maintains that the plaintiffs have not established that the City's actions were "motivated," at least in part, by their membership or obligation for service in the uniformed services, the required motivation needed by plaintiffs to satisfy their burden of proof is met by the existence of the policies and practice themselves. Plaintiffs' claims involve policies and practices, which by their very nature, attach consequences to a reservist's absence for military duty. For example, and as discussed more fully below, according to the collective bargaining agreement ("CBA") between the City and the firefighters' union: [54] military leave, unlike vacation and other related leave, will not count towards the "twenty-seven hour cap" on loss of overtime leave under the Federal Labor Standards Act ("FLSA"); the use of military leave in the same cycle as vacation leave means that the vacation leave will not count towards the "twenty-seven hour cap;" and absences for military leave in excess of fifteen days per year, disqualify a firefighter from receiving "bonus day" leave. Reservists assigned to the EMS division who cannot accept an unscheduled overtime opportunity because they are off duty on military leave are treated as if they had refused the opportunity, unlike non-reservists who are off duty for continuing education or Department training. No reservist, in either the Fire Fighting division or the EMS division, is given the opportunity to "make up" for the unscheduled overtime or upgrading opportunities missed when they are away on military duty. Plaintiffs are disparately impacted, and indeed discriminatorily penalized, by these policies and practices when compared to those employees who need not be absent from work to perform military reserve duty. According to the express language of the challenged employment practices or policies, the City cannot persuasively argue that it did not "take into account," "consider," or "condition its decision" on its employees' military-related absences.

Before analyzing the specific policies and practices challenged in this case, it should be noted that the City incorrectly argues that the plaintiffs' claims fall within § 4316 of the Act on the ground that the benefits at issue are seniority-based.

---

tion Management Corp., 462 U.S. 393, 401, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983)).

**51.** It should be noted that the right denied to the reservist in Monroe, that is, to arrange his work hours so that he could both fulfill his reservist obligations and put in a full forty hours of work, is now protected. See § 4303(2).

**52.** See Novak v. Mackintosh, 919 F.Supp. 870, 877 (D.S.D.1996); and Gummo, 75 F.3d at 106–07.

**53.** Yates, 145 F.3d at 1484–85; and Petersen v. Department of Interior, 71 M.S.P.R. 227,

234–35 (1996) (discussing relevant legislative history).

**54.** According to Plaintiffs' "Statement of Undisputed Facts," the permanent, uniformed members of the City's Fire Department are represented by the International Association of Fire Fighters, Local 624 (the Union), which serves as their exclusive bargaining agent. Since 1974, the Union and the City have executed a series of collective bargaining agreements governing the firefighters' wages, hours, and other terms and conditions of employment. Docket Entry 56, Plaintiffs' Appendix, at ¶ 26.

While it is undisputed that unscheduled overtime is distributed in both the Fire Fighting and EMS divisions in order of seniority, a policy not objected to by plaintiffs, § 4316 is inapplicable to this case. According to the provision's express language, it only applies to a person "who is *reemployed* under this chapter ...," [55] or "who is absent *'on furlough or leave of absence.'* " [56] Section 4316 is specifically tailored to apply to a reservist or veteran returning to employment from active duty rather than reservists, like the plaintiffs in this case, who have been away for relatively short periods of time to fulfill their standard drilling and training requirements.[57] As discussed in *Carney v. Cummins Engine Company, Inc.,*[58] the anti-discrimination provisions (now § 4311(a–c), formerly, § 2021(b)(3)) were specifically added "to protect the rights of reservists which had been found to be inadequately protected" under the provision cited by the City (§ 4316, formerly § 2024(d)).[59] The *Carney* court, in that regard, further stated:

> Contrary to defendant's contention, it is not "inconceivable" that Congress could have intended to grant reservists greater protection than veterans returning from active duty. That is the clear im-

port of Section [4311], and it is not illogical to extend to reservists some protection, such as the overtime opportunities missed here, that would simply not be practicable for the longer-term absences of veterans.[60]

In light of the plain language of the statute and the City's failure to cite legal authority in support of its position that § 4316 is the applicable provision in this case, the court will analyze plaintiffs' challenges to the City's policies and practices under the broad anti-discrimination provision of the Act, § 4311.

### 2. The Challenged Policies and Practices

In determining whether a "right," or "benefit of employment" has been denied in violation of USERRA, courts are usually guided by the three criteria outlined in *Allen v. United States Postal Service:*[61]

> First, the courts have considered whether ["the benefit of employment"] is one generally granted to all employees in the workplace, and whether it was denied [...] because of absence of military service. Several courts have ruled that a generally available benefit cannot be denied because of military duty.[62]

---

**55.** 38 U.S.C. § 4316(a) (Emphasis added)

**56.** § 4316(b) (Emphasis added).

**57.** According to plaintiffs' "Statement of Undisputed Facts," typically, a reservist or guardsman performs minimum requirements of drilling one weekend a month and annual training for two weeks a year. He may also be ordered to perform additional duties, meet mandatory educational requirements, or may volunteer for additional duties. Docket Entry 56, Plaintiffs' Appendix, at ¶ 30.

**58.** 602 F.2d 763 (7th Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 754 (1980).

**59.** *Id.* at 766

**60.** *Id. See also Lott v. Goodyear Aerospace Corporation,* 395 F.Supp. 866, 868 (N.D.Ohio 1975) (where the court held that the legislative history does not support the argument that the benefits of employment must be afforded only as to any person on a furlough or leave of absence. "Rather, the legislative history indicates that reservists who are required to attend weekly drills will be entitled to the same treatment afforded their coworkers not having such military obligations.").

**61.** 142 F.3d 1444 (Fed.Cir.1998).

**62.** *Id.* at 1446 (citing *Waltermyer v. Aluminum Company of America,* 804 F.2d 821, 824–25 (3d Cir.1986) (reservist was entitled to holiday pay despite requirement that employee be present on days before and after the holiday);

Second, the courts have considered whether the person absent on military duty was treated the same way as if the person had remained at work. These rulings recognize that although for some statutory purposes persons returning from military duty correctly are treated as if they had been on furlough or leave of absence, under [§ 4311] they must not be disadvantaged by failure to treat them as if they had been present at work.[63]

Third, the courts have considered whether it was reasonably certain that the benefit would have accrued to the employee but for the absence of military service.[64]

With these criteria in mind, the court will proceed to analyze each of the City's policies and practices challenged by plaintiffs in this case.

a. *The "Twenty-Seven" Hour Cap on Lost FLSA Overtime*[65]

■ With respect to overtime for firefighters assigned to the Firefighting divi-

sion, the collective bargaining agreement in effect since 1988 has provided, in relevant part:

Under a twenty-one (21) day cycle, each employee shall lose no more than twenty-seven (27) hours of overtime pay per year as a result of scheduled vacation leave being counted as productive time for F.L.S.A. purposes.[66]

In the 1995 collective bargaining agreement, the following provision was added:

For the purpose of computing eligibility for F.L.S.A overtime and application of the twenty-seven (27) hour limit in this paragraph, all other types of leave will take priority over vacation leave in application of this provision (i.e., when vacation leave and any other form of leave is used in the same 21 day cycle, the loss of F.L.S.A. overtime shall not apply to the twenty-seven (27) hour maximum loss).[67]

This provision also appears in the 1999

---

*Carney*, 602, F.2d at 766–67 (reservist was entitled to overtime opportunities he missed while on military duty)). While the court in *Allen* refers to the "sole cause" standard as enunciated in *Monroe*, the court has omitted the reference from the quoted paragraph as it is not a correct statement of the law. Besides referencing the wrong standard, the court in *Allen* does provide useful guidance.

**63.** *Id.* at 1446–47 (citing *West v. Safeway Stores, Inc.*, 609 F.2d 147, 150 (5th Cir.1980) ("collective bargaining agreement must be construed as if (reservist) was constructively present at work."); and *Carlson v. New Hampshire Dept. of Safety*, 609 F.2d 1024, 1027 (1st Cir.1979) (where the court, in stating that it was not sufficient to treat reservist like any employee on leave, deemed a shift change as a "constructive demotion.")), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980).

**64.** *Id.* at 1447 (citing *Teamsters Local Union 612 v. Helton*, 413 F.2d 1380, 1383–84 (5th Cir.1969)).

**65.** This policy is described in detail in plaintiffs' "Undisputed Statement of Facts," Docket Entry 56, Appendix, at ¶¶ 49–57.

**66.** Docket Entry 56, Plaintiffs' Appendix, at ¶ 49 and Agreed Exhibits A & B. The collective bargaining agreements in effect at times material to this case are the following: the agreement in effect from October 1, 1988 through November 15, 1995; the agreement in effect from November 14, 1995 through September 30, 1999, and the current agreement, in effect since September 30, 1999. Plaintiff's Appendix, at ¶ 27; and Amended Joint–Stipulated Facts, Docket Entry 61, at ¶ 29.

**67.** This provision is found in Article XIV, Section 3 of the agreement. Docket Entry 56, Plaintiffs' Appendix, at ¶ 50 and Agreed Exhibits A & B; and Amended Joint–Stipulated Facts, at ¶ 42. *See also* Plaintiffs' Exhibit 5. Fire Department's Division Order on "FLSA Guidelines," dated July 1, 1997.

agreement.[68]

It is undisputed that firefighters assigned to the Firefighting division who work twenty-four hour shifts have overtime built into their work schedules.[69] For purposes of overtime compensation under the Fair Labor Standards Act ("FLSA"),[70] instead of having their work hours measured by the conventional forty hour per week standard, firefighters are subject to a special set of work hour standards designed to accommodate the twenty-four hour shifts.[71] The Secretary of Labor, through regulation, has set the maximum number of hours which firefighters can work, depending on the length of the FLSA work period used by the employer.[72] Pursuant to the CBA, the City's Fire Department operates on a twenty-one day FLSA work period.[73] Thus, according to the federal regulations, the maximum number of hours which firefighters can work in a twenty-one day period without earning overtime is 159. The City's firefighters, however, are scheduled to work 168 hours; and as such, they are entitled to receive nine hours of pay at an overtime rate every twenty-one days.[74] According to the plaintiffs, this is known in the Fire Department as "FLSA overtime."[75] Both, the FLSA and the CBA generally require that an employee "actually work" the hours if they are to receive the overtime rate.[76] As plaintiffs state: "[i]t is axiomatic that if an employee takes some sort of leave during the work period, he does not earn an overtime rate."[77]

The Fire Department, however, through provisions in the CBA, provides some critical exceptions to this requirement, the result of which employees receive compensation at an overtime rate when they have not actually worked the requisite amount of hours.[78] The City and the Union have negotiated a benefit whereby once a firefighter loses twenty-seven hours of FLSA overtime in a given year (*i.e.*, once he loses the overtime in three FLSA work periods) to the taking of vacation or vacation-related leave, his loss of FLSA overtime is capped. When he takes additional vacation leave that year, even though he is not actually working, he will still receive his FLSA overtime as if he were. Vacation

68. Docket Entry 56, Agreed Exhibit B.

69. It is undisputed that the firefighters assigned to the EMS division are *not* detrimentally affected by this policy. This policy is only challenged by those plaintiffs/firefighters who are assigned to the Fire Fighting division since they are on a work schedule requiring the regular payment of overtime compensation. *See* Docket Entry 56, at 2 & fn. 2.

70. 29 U.S.C. § 201 *et seq.*

71. Docket Entry 56, at 10. *See* 29 U.S.C. § 207(k) and 29 C.F.R. § 553.200 *et seq.*

72. *Id.*

73. Docket Entry 56, Plaintiffs' Appendix, at ¶ 47 and Docket Entry 61, Amended Joint–Stipulation of Facts, at ¶ 32.

74. Docket Entry 61, at ¶ 33; and Plaintiffs' Appendix, Docket Entry 56, at ¶ 48.

75. Docket Entry 56, at 10.

76. Docket Entry 56, at 11.

77. *Id.* (and legal authority cited therein).

78. *Id.* and Plaintiffs' Appendix, at ¶¶ 50–51 and Agreed Exhibits A & B; and Docket Entry 61, at ¶¶ 42–43. The Plaintiffs further note that through its own policy, the Fire Department treats firefighters who are off work on various types of administrative leave do not lose their FLSA overtime at all, even though they are not actually performing their regular duties and are not working the fifty-six hours per week. For instance, a firefighter assigned to play in the Department's band or sent on recruiting trips or attending specialized training, will still receive his FLSA overtime. Docket Entry 56, at 11 and fn. 10 (citing to Plaintiffs' Exhibit 5, at 2).

leave, floating vacation shifts (that is, a vacation shift taken apart from vacation leave scheduled in advance and typically, in groups of four twenty-four hour shifts), bonus day leave, perfect attendance leave, and vacation leave used as Family Medical Leave Act leave, all count towards the "twenty-seven" hour cap.[79] Military leave inexplicably does not.[80] The plaintiffs, in this regard, maintain that while "the impact of absences due to vacation is blunted ... the impact of absences due to military service is not." [81]

Military reservists are, without question, bound to be absent from work more often than their non-reservist counterparts. "The essence of reserve duty in this context is absence from work." [82] Reservists must be off work to train a minimum of one weekend per month and two weeks per year, and many have significantly more extensive time commitments.[83] Any use of their allotted fifteen days per year of military leave will take them out of their FLSA overtime for the cycle in which they use it.[84] Depending on how their reservists duties are scheduled, a factor which more often than not they have little to no control over, they face the possibility of

losing the FLSA overtime in at least some of the seventeen FLSA cycles per year.[85]

The plaintiffs also take issue with the related provision in the CBA which provides that if vacation leave is taken in conjunction with another type of leave, such as military leave, the vacation leave taken will *not* count towards the 27 hour cap.[86] Accordingly, when a reservist is forced to use vacation leave in the same FLSA cycle as military leave, either because the reservist is using his own vacation leave so that he will have enough time off to fulfill a training requirement, or because his military duty happens to fall in the same cycle as his pre-scheduled vacation, he loses the benefit of the cap.[87] For plaintiffs, even the use of their allotted military leave not only means that the reservist will "automatically lose their FLSA overtime; their use of military leave also limits their ability to take advantage of the twenty-seven hour cap in the use of vacation leave. Plaintiffs contend that in order to counter the disadvantage posed to them by this provision, they sometimes choose, albeit not required by the City, to forego the use of their allotted military leave altogether, and instead exhaust their own vacation leave or even trade time with

79. *Id.* and Plaintiffs' Exhibit 5, at 1.

80. *Id.*

81. Docket Entry 64, at 9.

82. *West,* 609 F.2d at 149.

83. Docket Entry 56, at 12 & fn. 11 (citing *Green v. Spartan Stores, Inc.,* 112 L.R.R.M. (BNA) 2099 (W.D.Mich.1982), for the proposition that it is immaterial if the reservist is absent for the purpose of fulfilling his minimal requirement, is absent because he is ordered to perform additional service, or has initiated the additional service himself); and Plaintiffs' Appendix, at ¶ 30.

84. *Id.* According to plaintiffs, and undisputed by the City, both Texas law and City policy

require that a reservist be paid for fifteen days of military leave a year. Docket Entry 64, at 7.

85. *Id.* at 12.

86. Docket Entry 56, Plaintiffs' Appendix, at ¶ 55..

87. *Id.* Plaintiffs further point out that this is very likely to occur, as typically firefighters have four vacation groups of four shifts each per year. These are scheduled by seniority, prior to the beginning of the year. "Not only does the firefighter have limited control over when he is scheduled for reservist duty, he also has limited control over when he is scheduled for vacation, and no flexibility for rescheduling his vacation groups to avoid the impact of this provision." *Id.* at fn. 12.

other firefighters in order to fulfill their service requirements.[88]

It is evident that, through these employment policies and practices, the plaintiffs are being denied the same benefit otherwise available to their non-reservist counterparts, namely the twenty-seven hour cap on lost FLSA overtime per year, which translates into the payment of overtime compensation when overtime hours are not actually worked. Plaintiffs are indeed at a disadvantage for no other reason other than their military reserve status.[89]

Contrary to defendant's position, the plaintiffs in this case are not seeking any preferential treatment. Rather, they seek to be treated the *same* as their non-reservists counterparts.[90] While the City attempts to compare plaintiffs with those coworkers who are away from work on some other non-military leave of absence, that is not the proper comparison. "The mandated standard of comparison, is not, as defendants would maintain, to 'those coworkers away on non-military leave of absence' but to the more embrasive class of 'coworkers not having (reserve) obligations.' "[91] Indeed, the Fifth Circuit stated in *West v. Safeway Stores, Inc.,*[92] that the Act requires that employers, in applying collective bargaining agreements which grant a benefit of employment based on "presence" rather than on "hours actually worked," should treat reservists as if they were "constructively present" during their reserve duty.[93]

The City does not deny the adverse impact of its policy concerning the twenty-seven hour cap on lost FLSA overtime on plaintiffs. It does argue, however, that its actions do not violate USERRA because it has not singled out military leave for discriminatory treatment. For instance, the City posits that other types of leave are also excluded from being counted towards the twenty-seven hour cap (*i.e.,* sick leave, emergency leave, light duty, etc.). This is not a convincing argument because:

> [i]t is immaterial that non-military employees of defendant on leave of absence would not be entitled to overtime opportunities [ . . . ] since the right of reservists to such opportunities is governed by statute rather than by collective bargaining agreement. Nor does it matter that affording plaintiff relief might conflict with the collective bargaining agreement between defendant and the Union.[94]

Consequently, the City's only affirmative defense raised in this case, namely that its actions were instituted pursuant to a collective bargaining agreement, a defense frequently raised by employers in benefit cases, is one that has been uniformly re-

---

88. *Id.* at 13.

89. *See e.g., Waltermyer v. Aluminum Company of America (ALCOA),* 804 F.2d 821, 825 (3d Cir.1986); *Hanning v. Kaiser Aluminum,* 95 L.R.R.M. (BNA) 2964 (E.D.La.1977); and *Kidder v. Eastern Air Lines,* 469 F.Supp. 1060, 1066–67 (S.D.Fla.1978), cases decided pre-USERRA in which the courts held that military reservists were entitled to holiday pay which was available to all employees who were present the week in which the holiday fell.

90. Docket Entry 56, at 9.

91. *Carlson,* 609 F.2d at 1027 (citations omitted).

92. 609 F.2d at 150.

93. *Id.*

94. *Carney,* 602 F.2d at 766 (citing *Kidder,* 469 F.Supp. at 1066–67; and *Lott v. Goodyear Aerospace Corp.,* 395 F.Supp. 866, 869–70 (N.D.Ohio 1975); and *McKinney v. Missouri–Kansas–Texas R. Co.,* 357 U.S. 265, 268–69, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958)).

jected by the courts.[95] Further, the City's affirmative defense fails for a more subtle reason due to the nature of the plaintiffs' policies and practices claims. As the court in *Robinson v. Morris Moore Chevrolet–Buick* explained, for the defense to be successful, the employer 'must show its legitimate reason, standing alone, would have induced it to make the same decision.[96] It should also be noted that since the collective bargaining agreement accepted by the City imposes the penalties for the military leave absences, the City is hard-pressed to show that it would have nevertheless imposed the penalties, irrespective of the absences.

Moreover, the City maintains there is no requirement that a military reservist use scheduled vacation time to perform his military service and that some of the plaintiffs have "voluntarily decided to incur this loss."[97] In making this argument, however, the City ignores the fact that the plaintiffs incur a loss when they use their allotted fifteen days of military leave. Further, the undisputed evidence establishes that while the City provides fifteen days of paid military leave, the reservists are frequently required to be absent more often, in which case the only paid leave available for them to use is vacation leave.[98] Plaintiffs do not deny that they will sometimes choose to take vacation leave, or to trade time with another firefighter, in lieu of using military leave in order to avoid the penalty associated with the use of military leave. They maintain though, that even if the avoid-

ance of this penalty in this manner may be a voluntary act (*i.e.*, not imposed by the City), it is nevertheless a direct consequence of the City's discriminatory practices.[99] The court agrees.

Based on the court's analysis of the exclusion of military leave from the twenty-seven hour cap under the *Allen* criteria, the court concludes that it violates USER-RA. The availability of the twenty-seven hour cap is a "benefit of employment" granted to all employees, especially so since all employees receive and are required to take vacation leave. They are thus guaranteed to benefit (*i.e.*, receive overtime compensation they would not otherwise be entitled to receive) from the cap once they have lost twenty-seven hours of FLSA overtime. The plaintiffs, because of their military reserve status, are not treated as though they are "constructively present" at work; indeed, they are not treated as well as if they were on vacation. The court thus, finds, that plaintiffs have met their burden of showing that their military status was at least a motivating or substantial factor considered by the City in its implementation of the twenty-seven hour cap. It is undisputed that plaintiffs would have benefitted from the policy but for their military obligations. Further, there is no genuine issue of material fact with respect to the City's inability to affirmatively establish that its actions in implementing this practice "would have been taken" in the absence of plaintiffs' military reserve status.[100]

Because plaintiffs' claim for "loss of straight-time for hours worked claim,"[101]

---

95. *Id.* See Docket Entry 60, at 8 and 10.

96. 974 F.Supp. at 576.

97. Docket Entry 60, at 6.

98. Docket Entry 56, Plaintiffs' Appendix, at ¶ 40.

99. Docket Entry 64, at 10 and fn. 6.

100. Particularly, the City has failed to establish that similar provisions have been upheld under USERRA.

101. Docket Entry 56, at 19–20; docket entry 64, at 11–12. The City's briefing on the issue is found in Docket Entry 60, at 8–9; and Docket Entry 63, at 5–7.

is connected to plaintiffs' instant claim for lost FLSA overtime compensation, and as plaintiffs' state: "[it] is an adverse effect suffered every time a reservist loses FLSA overtime to the taking of military leave," [102] the court finds it appropriate to reserve judgment on the merits of plaintiffs' claim at this time and address it during the damages phase of the case.

b. *Unscheduled Overtime Compensation and Upgrading/Training Opportunities*

i. *Unscheduled Overtime*

█ In addition to the FLSA overtime built into their work schedules, firefighters assigned to both the Firefighting and EMS divisions have the opportunity to work unscheduled overtime, that is, extra hours worked in addition to the regular work shift, for which a firefighter would receive time and one-half his regular rate of pay. Plaintiffs allege that since the overtime increments are typically for increments of twelve hours each, this can amount to a significant amount of money, and as a result, the opportunities are highly coveted.[103]

It is undisputed that the distribution of overtime operates somewhat differently in the Firefighting and EMS divisions. For instance, in the EMS division, if a firefighter cannot be reached or is not available when the overtime opportunity is offered, as when he is on reservist duty, then he is treated as though he refused the opportunity and his name is "crossed off" that particular overtime list.[104] In the Firefighting division, if a firefighter is not available to work overtime, his name is skipped on the list but he remains eligible to be offered another opportunity from that list, provided that he is not on long-term leave, in which case he is skipped altogether.[105] Significantly, neither policy requires that reservists be "made up" on the overtime opportunities they miss when they are off from work performing reserve duty. The firefighters in both divisions, because of their military reserve duties, stand at a disadvantage, when compared with their non-reservist counterparts, for being scheduled for and receiving overtime compensation.[106] Similar policies, denying military reservists the benefit of earning or "be made" available overtime opportunities, have been struck down as discriminatory.

For example, in *Carney v. Cummins Engine Co.*,[107] the Seventh Circuit Court of

102. *Id.* at 19 & fn. 17.

103. Docket Entry 56, Plaintiffs' Appendix, at ¶ 69. For a detailed description of the City's unscheduled overtime policy, the court relies on the undisputed paragraphs in Plaintiffs' Appendix, at ¶¶ 69–74.

104. Docket Entry 56, at 16 & fn. 15.

105. Plaintiffs had admitted that the policy applicable to the EMS division is harsher than the one applied in the Firefighting division. *Id.* In addition, the City has acknowledged that while firefighters assigned to the EMS division are not allowed to make up overtime opportunities missed, there is one exception to this policy, albeit applied in the same manner to reservists and non-reservists alike.

Docket Entry 60, at 11. The exception applies when an EMS employee is attending continuing education training. According to the deposition testimony of Alfred Montez, EMS employees who attend continuing education training are allowed to make up the overtime opportunity missed because the EMS division considered employees in continuing education training, as not on any type of leave, but merely performing other work duties. *Id.* at Exhibit D, at 4–13.

106. *See West,* 609 F.2d at 150 ("reservists must be treated as if they were 'constructively present' during their reserve duty....").

107. 602 F.2d 763 (7th Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 754 (1980).

Appeals reasoned that the employer's practice of treating reservists's unavailability to work overtime as tantamount to a refusal to work was a violation of the VRRA.[108] The court in *Carney*, in response to the defendant's contention that the plaintiff was seeking preferential treatment by demanding the right to make up missed overtime, stated that the plaintiff did not voluntarily decline the opportunity to work overtime and indeed would have worked overtime but for his absence due to his military duty. The employer was thus ordered to permit the reservist to make up missed overtime opportunities, or alternatively compensate him.[109] Significantly, in support of its holding, the *Carney* court stated: "It is immaterial that non-military employees of defendant on leave of absence would not be entitled to overtime opportunities [...] since the right of reservists to such opportunities is governed by statute rather than by the collective bargaining agreement." [110]

Likewise, the district court in *Lott v. Goodyear Aerospace*,[111] in upholding the statutory right of an employee to the same overtime opportunities as non-reservist employees, stated:

> Carrying out its congressional purpose [what is now Section 4311] entitles a reservist, who cannot take advantage of overtime work because of his military duty, to be equated with a person who is able to work overtime [internal citation omitted]. Since the latter person draws overtime pay, unless he voluntarily chooses not to exercise the opportunity, the reservist should not be marked up for overtime that he could not take advantage of because of his military duty.[112]

Accordingly, following the *Carney* and *Lott* decisions, the court rules that the City is liable under USERRA as plaintiffs have established, as a matter of law, that their military reserve status is a motivating factor in the City's decision to deny them the opportunity to "make up" for any lost overtime. The City's defenses, *i.e.*, that plaintiffs are seeking preferential treatment, that they must be "present" in order to receive overtime payment, and that they are treated the same as other similarly-situated non-reservist firefighters, are not legally or factually sufficient for the City to meet its burden of establishing that it would have "taken the same action," irrespective of the military reserve status.

### ii. Upgrading/Training Opportunities[113]

As in the claim to "make up" overtime missed because of military duty, the dis-

---

108. *Id.* at 766–67.

109. *Id.*

110. *Id.* at 766 (internal citations omitted).

111. 395 F.Supp. 866, 869–70 (N.D.Ohio 1975).

112. *Id.* at 870. While the court acknowledges the contrary ruling in *Breeding v. TRW, Inc., Ross Gear Div.*, 477 F.Supp. 1177, 1184 (M.D.Tenn.1979) (where the court held that an employee unavailable to work overtime on account of his military training was not entitled to an alternative opportunity under the Act), the court considers the Seventh Circuit's ruling in *Carney* a more sound and accurate

statement of the law. Further, the reasoning in *Breeding* is weakened by its extensive reliance on *Monroe*, the outcome of which would have been different under USERRA as the Act now expressly protects the reservist's right to select his work hours. 38 U.S.C. § 4303(2). *See* discussion at 11 and fn. 45, *supra*.

113. Under Article XVI of the CBA, an employee who works in a higher classification shall be paid at the higher classification rate of pay for actual time worked in that classification. In the Fire Department, this is also known as "upgrading." Opportunities for upgrading are generated through the absence of a firefighter of a superior rank. Docket Entry 56, Plaintiffs' Appendix, at ¶ 75. The court, in its

positive issue with regards to the upgrading and/or training opportunities is whether the City is required by USERRA to allow absent reservists to "make up" any opportunities for upgrading and/or training missed while on duty. In view of the liberal standard applicable to USERRA claims, the answer to that question is "Yes." The court finds instructive the case of *Yates v. Merit Systems Protection Board*.[114] In that case, the Federal Circuit Court held that the Merit Systems Protection Board had jurisdiction to address plaintiff's claim under USERRA, namely, that she had been denied the opportunity to "make up" the two weeks of training and her thirty-day evaluation she missed while on reserve duty.[115] The court reasoned that each of these claims is properly viewed as a "benefit of employment" because each was an "advantage" or "status" of her probationary employment with her employer.[116]

The plaintiffs rely on the individual circumstances of plaintiff Captain Anthony Rogers, as the highest ranked plaintiff, as representative of the type of unequal treatment and/or disadvantages suffered by all the named-plaintiffs, in terms of the upgrading and/or training missed because of their military duties.[117] Whether or not plaintiffs have enough evidence to prove an injury based on this claim under USERRA will be left to the fact-finder to decide during the damages phase of this case. At this juncture of the case, plaintiffs have shown that USERRA guarantees them these opportunities.

analysis of plaintiffs' claim for missed upgrading and/or training opportunities, relies on the description provided by plaintiffs' "Statement of Undisputed Facts," ¶¶ 75–81.

**114.** 145 F.3d 1480 (Fed.Cir.1998).

**115.** *Id.* at 1484–85.

### c. *"Bonus Day" Leave and "Perfect Attendance" Leave*

■ Bonus days and perfect attendance leave are two other benefits available to employees in the Fire Department under the CBA. They are available to reservists only on a reduced basis. Beginning with the 1995 CBA, Fire Department employees were and are eligible to earn two additional leave days (one additional shift), for each six months of "perfect attendance." This benefit is called "Bonus Day Leave."[118] They also receive two extra incentives, referred to in the CBA as "perfect attendance leave" (or "PAL"), entitling an employee to use two shifts of vacation leave outside his regularly scheduled vacation groups (a floating vacation shift or "FVS"), providing some flexibility for taking time off, and allowing conversion of one shift of accrued sick leave to vacation leave. The relevant provisions of the CBA which discuss these benefits are found in Article XVII of the CBA. According to Article XVII, Section 4 of the 1999 CBA:

> B. Employees not working for one of the following reasons are not eligible to receive the two (2) days perfect attendance bonus:
>
> 1. sick leave,
>
> 2. line of duty injury ["LOD"] (provided that the use of LOD leave for a portion of a shift, as to those employees that return to work in the following shift, shall not be a disqualification under this section),
>
> 3. emergency leave,

**116.** *Id.* at 1485 (citing 38 U.S.C. § 4303(2)).

**117.** Docket Entry 56, at 18.

**118.** Docket Entry 56, Plaintiffs' Appendix, at ¶ 58.

4. *military leave in excess of fifteen (15) days in a calendar year,*

5. leave without pay, and

6. suspensions.

C. The types of leave that will not adversely affect the employee's entitlement to the perfect attendance bonus are:

1. LOD (provided that the use of LOD leave for a portion of a shift, as to those employees that return to work on the following shift),

2. Properly scheduled and authorized vacation days, holidays, compensatory time, bereavement leave, administrative leave,[119] and

3. time restored by the commissioner or an arbitrator (hearing examiner).[120]

Based on the express terms of the quoted paragraphs, if a firefighter takes military leave in excess of fifteen days (the allotment of paid leave which City employees receive),[121] he will not qualify for bonus day leave.

Section 3 of Article XVII of the CBA contains the provisions concerning perfect attendance leave. It provides, in relevant part:

A. Any employee who achieves perfect attendance over a 6 month period shall be entitled to utilize two (2) additional shifts of accrued vacation leave outside of scheduled vacation periods plus may convert one shift of sick leave for use as a floating vacation shift in accordance with the provisions of this section, here-inafter to be called "perfect attendance leave". Perfect Attendance Leave shall be used during the subsequent six (6) months.

D. "Perfect attendance" shall mean that the employee has not utilized any of the following types of leave:

1. sick leave,

2. emergency leave (provided that the use of bereavement leave, although taken on an emergency leave basis, shall not be a disqualification under this section),

3. line of duty leave (provided that the use of LOD leave for a portion of a shift, as to those employees that return to work on the following shift, shall not be a disqualification under this section),

4. leave without pay, and

5. suspensions.[122]

Whether the use of military leave in excess of 15 days disqualifies a reservist from receiving perfect attendance leave is not as clear as in "bonus day leave," considering that the above-quoted provisions do not explicitly include military leave in the list of disqualifying leaves. Plaintiffs, however, have produced as summary judgment evidence a Fire Department's "FLSA and Leave Policy" document, uncontroverted by the City, which expressly provides that military leave *over* fifteen days disqualifies a firefighter from receiving PAL benefits.[123] A determination of whether any of the named-plaintiffs have been deprived of

---

**119.** The term "perfect attendance" appears to be a term of art under the CBA because it is not used in its literal meaning as firefighters taking vacation, holidays, compensatory time, bereavement leave and administrative leave, among others, will still qualify as having "perfect attendance." In other words, the use of those periods of leave do not count against "perfect attendance." Docket Entry 56, at 15.

**120.** Docket Entry 56, Agreed Exhibits A & B.

**121.** Plaintiffs object to the term "military leave in excess of 15 days." According to the plaintiffs, "[t]here is no military leave in excess of 15 days; after 15 days are used, what the firefighter will have to be using is his own vacation leave." Docket Entry 56, at 16.

**122.** Docket Entry 56, Agreed Exhibits A & B.

**123.** *Id.* at Exhibit 13.

perfect attendance leave as a result of this policy will be considered in the damages portion of this case. To the extent that plaintiffs allege that the City is liable under USERRA because it has "taken into account," or "considered," plaintiff's military reserve status in offering to them the Bonus Day and Perfect Attendance Leaves only on a reduced basis, the court finds that plaintiffs have met their burden.

As an affirmative defenses, the City again argues that: "military reservists are treated similarly to non-reservists who miss work because of sick leave, LOD leave, emergency leave, leave without pay and suspensions," [124] and that "the actions at issue were instituted pursuant to [the CBA]." [125] As discussed earlier in the context of the twenty-seven hour cap on lost FLSA overtime, those are not viable defenses and fail as a matter of law.[126] The proper group for purposes of comparing plaintiffs, who may have been on military reserve duty longer than the allotted fifteen days, are those co-workers who were present at work because they did not have military obligations. It is immaterial that the provisions have been implemented as a result of a CBA, because plaintiffs' entitlement to the same full benefits of Bonus Day and Perfect Attendance leaves enjoyed by their non-reservist counterparts, is protected by § 4311 of USERRA.[127]

### F. Conclusion

Based on the foregoing, it is hereby **ORDERED** that plaintiffs' cross motion for summary judgment (Docket Entry 56) is **GRANTED,** with the exception of their claim concerning straight loss time as that claim will be addressed during the dam-

ages phase of the case. Defendant's cross-motion for summary judgment (Docket Entry 60) is **DENIED** in its entirety. For the reasons articulated in this Order, Defendant's objections to certain exhibits attached to plaintiffs' summary judgment motion (Docket Entry 62) are **DENIED.** The court, by a separate order, will set the damages portion of this case for a bench trial.

---

124. Docket Entry 60, at 10.

125. *Id.*

126. *See* discussion on page 842 and related footnotes, *supra.*

127. The City has again failed to present any summary judgment evidence and/or argument showing that similar provisions have been upheld under USERRA.