RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0098P (6th Cir.)
File Name:  03a0098p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

VIENGSAMON PHARAKHONE,
*Plaintiff-Appellant,*

*v.*

No. 01-5955

NISSAN NORTH AMERICA,
INC., and RODNEY BAGGETT,
*Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 99-01121—William J. Haynes, Jr., District Judge.

Argued:  March 11, 2003

Decided and Filed:  April 2, 2003

Before:  NELSON, COLE, and GILMAN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:**  Joseph Howell Johnston, Nashville, Tennessee,
for Appellant.  Jonathan R. Mook, DiMURO, GINSBERG &
MOOK, Alexandria, Virginia, for Appellees.  **ON BRIEF:**
Joseph Howell Johnston, Nashville, Tennessee, Wade
Bonham Cowan, Nashville, Tennessee, for Appellant.
Jonathan R. Mook, DiMURO, GINSBERG & MOOK,

1

Alexandria, Virginia, Larry G. Trail, TRAIL & TRAIL,
Murfreesboro, Tennessee, for Appellees.

———————————

**OPINION**

———————————

DAVID A. NELSON, Circuit Judge.  This is an appeal
from an order granting summary judgment to the defendants
on a claim that the Family and Medical Leave Act, 29 U.S.C.
§§ 2601 *et seq.* ("FMLA"), was violated when the plaintiff
was discharged upon his return from FMLA leave.  The
plaintiff argues that there are genuine issues of material fact
that should have precluded the entry of summary judgment.
Concluding that the factual disputes identified by the plaintiff
are not material to his claim under the FMLA, we shall affirm
the judgment entered by the district court.

I

The plaintiff, Viengsamon Pharakhone, worked as a
production technician at an automobile plant operated by
defendant Nissan North America, Inc. Defendant Rodney
Baggett was Pharakhone's immediate supervisor at the plant.

Mr. Pharakhone says that in late November or early
December of 1997 he told Mr. Baggett that his wife was
expected to give birth at the end of December and that he
would need to take leave thereafter.  Pharakhone says he told
Baggett that he needed time off both to care for his wife and
baby and to help manage a restaurant that his wife had
recently purchased.  Although Nissan's employee handbook
contained a provision prohibiting unauthorized work while on
leave, Pharakhone says that Baggett did not tell him he could
not work at the restaurant.

Mr. Baggett does not recall any conversation on this subject
in November or December of 1997.  According to Baggett, he
first learned of Pharakhone's desire to take leave during the

week of January 12, 1998. At that time, Baggett says, he asked Pharakhone who would run the restaurant after the baby was born. Pharakhone replied that he was going to manage the restaurant himself, whereupon Baggett allegedly "told him he could not." Although Pharakhone is said to have indicated that he understood, Baggett "felt like [Pharakhone] was going to work" at the restaurant despite Nissan's policy. Because he "didn't want to lose" Pharakhone, Baggett later testified, he reported the conversation to his supervisor, Thomas Buchanan, and to a human resources manager, James Bowles.[1]

Mr. Pharakhone's child was born on January 19, 1998, the Martin Luther King holiday. Pharakhone telephoned Baggett on January 20, informed him of the birth, and asked for four weeks of leave. Baggett approved the request. Pharakhone then gave Baggett the telephone number of the restaurant as a place where he could be reached.

Mr. Baggett telephoned Mr. Pharakhone at the restaurant several hours later. Baggett has testified that he was concerned about Pharakhone's having given him the restaurant's number, so he called to remind Pharakhone that working while on leave was not permitted. According to Pharakhone, this was the first time he had been told that Nissan policy would prohibit him from working at the restaurant while on leave. Pharakhone telephoned Bowles, who confirmed that Pharakhone was not permitted to work at the restaurant. Bowles also sent Pharakhone a memorandum stating that "you are not allowed to perform work *of any kind* without prior approval from the Company." The memo warned that "[p]erforming unauthorized work while on leave will be grounds for termination."

Notwithstanding this warning, Mr. Pharakhone worked at the restaurant throughout his four weeks of leave. He testified later that he "had no choice," because there was no one else to manage the restaurant.[2] Nissan discovered that Pharakhone was working, and at the completion of his leave he was fired for violating company policy.

Mr. Pharakhone sued Nissan and Mr. Baggett, asserting claims for violation of the FMLA and for negligent misrepresentation. The defendants moved for summary judgment. The district court granted the motion as to the FMLA claim, concluding that Nissan was entitled to terminate Pharakhone's employment because of his having worked while on leave. Pharakhone's state-law claim was dismissed without prejudice. This appeal followed.

II

There are substantial factual disputes in this case. Mr. Pharakhone says that he told Mr. Baggett no later than the first week of December, 1997, that he wanted to take leave after the birth of his child for the purpose (among others) of working at his wife's restaurant. Pharakhone says that Baggett did not object. Baggett says he did not learn of Pharakhone's plan to take leave for that purpose until the week of January 12, 1998, whereupon he immediately told Pharakhone that Nissan policy prohibited working while on leave. Pharakhone denies learning of the prohibition from Baggett – or from anyone else, for that matter – until January 20, 1998, the first day of his leave.

The question we must decide is whether the facts in dispute are material. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1] Buchanan and Bowles both testified that they met with Pharakhone during the week of January 12 to reiterate that Nissan did not permit unauthorized work while on leave. Pharakhone has denied that such a meeting occurred.

[2] There was evidence that the previous owners of the restaurant had volunteered to fill in while Mrs. Pharakhone recovered from childbirth, but that Mr. Pharakhone had declined the offer in the belief that he could do the work himself while on leave from Nissan. The previous owners then left the country for several weeks.

242, 247-48 (1986) (noting that Rule 56(c), Fed. R. Civ. P., requires a genuine issue of *material* fact to defeat summary judgment). "[T]he substantive law will identify which facts are material." *Id.* at 248. If, under the governing law, the outcome would be the same regardless of how a factual dispute is resolved, the dispute is no bar to summary judgment. See *id.* And we are satisfied that Mr. Pharakhone's FMLA claim would have to be decided the same way no matter whose version of the facts is accepted.

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" certain rights created by the statute. 29 U.S.C. § 2615(a)(1). Among these statutory rights is that of an eligible employee to take up to 12 weeks of leave "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." A concomitant right is that of an employee who has taken FMLA leave "to be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. §§ 2612(a)(1)(A), 2614(a)(1)(A).

"The right to reinstatement [under the FMLA] is . . . not absolute." *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). An employer need not reinstate an employee who would have lost his job even if he had not taken FMLA leave. See 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216; *Kohls*, 259 F.3d at 804-05. And an employer need not reinstate an employee if application of "a uniformly-applied policy governing outside or supplemental employment" – *i.e.*, a rule against working while on leave – results in the employee's discharge. 29 C.F.R. § 825.312(h); see *Sepe v. McDonnell Douglas Corp.*, 176 F.3d 1113, 1115-16 (8th Cir.), *cert. denied*, 528 U.S. 1062 (1999).

It follows from this that "whether an employer violates the FMLA turns on why the employee was not reinstated." *Kohls*, 259 F.3d at 805. If the employee cannot show that he was discharged because he took leave – or at least that his taking of leave was a "negative factor" in the employer's

decision to discharge him – he cannot show a violation of the FMLA. See *id.*; *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1131 (9th Cir. 2001).

The record before us admits of only one answer to the question why Mr. Pharakhone lost his job. It is undisputed that Nissan had a documented policy prohibiting "unauthorized work for personal gain while on leave." It is likewise undisputed that on the first day of Mr. Pharakhone's leave, both Mr. Baggett and Mr. Bowles advised him that he was not permitted to work at his wife's restaurant. Mr. Pharakhone nevertheless elected to work at the restaurant throughout his leave. Having discovered that Pharakhone was violating company policy, Nissan fired him – and there is no evidence that it had an ulterior motive for doing so. The undisputed evidence thus compels a finding that Mr. Pharakhone was discharged because he violated Nissan's no-work policy, and not because he took FMLA leave.

Mr. Pharakhone argues that the discrepancy between his testimony and Mr. Baggett's is material because under his version of the facts – but not under Baggett's – Nissan would be equitably estopped from relying on its no-work policy as a basis for discharging him. In this connection Mr. Pharakhone maintains that Mr. Baggett's silence in December of 1997 amounted to tacit approval of Pharakhone's plan to work at the restaurant while on leave. Pharakhone claims to have relied on that approval to his detriment.

Nissan argues that the estoppel claim has been waived. Be that as it may, it seems to us that the claim is intertwined with the state-law claim for negligent misrepresentation – a claim that was properly dismissed without prejudice. Mr. Pharakhone's testimony demonstrates, at most, that Mr. Baggett's silence led him to decline assistance that later turned out to be necessary. Whether this is sufficient to raise a jury issue on his state-law claim is not for us to say. What we do say, however, is that the FMLA, in our opinion, was not designed to afford relief in such a situation. To prevail on

his FMLA claim, Mr. Pharakhone would have had to demonstrate that his taking of leave was a "negative factor" in Nissan's decision to discharge him.  This he has not done – and none of the disputed facts can assist him in doing so.

**AFFIRMED.**