Marc **SCHMAUCH,** Plaintiff,

v.

**HONDA OF AMERICA MANUFACTURING, INC.,** Defendant.

No. C2–02–751.

United States District Court, S.D. Ohio, Eastern Division.

Dec. 11, 2003.

Gary A. Reeve, Reeve & Watts, Worthington, OH, for Plaintiff.

MaryEllen Fairfield, Vorys Sater Seymour & Pease–2, Columbus, OH, for Defendant.

### OPINION AND ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on both Plaintiff, Marc Schmauch's ("Plaintiff" or "Schmauch"), and Defendant, Honda of America Manufacturing, Inc.'s ("Defendant" or "Honda"), Motions for Summary Judgment. For the following reasons, the Court **DENIES** both motions for summary judgment.

## II. FACTS[1]

Schmauch was hired by Honda and was employed as a production associate until he was terminated in August 2001. During his term of employment, Plaintiff was a member of the Ohio Air National Guard and requested many leaves of absence to perform military service. Each of his military leave requests was approved by Honda, and after each of those leaves he was restored to his prior position.

Defendant has a written associate handbook. Plaintiff received and signed for a copy of the handbook, which contains Defendant's workplace policies. One of the policies requires associates to maintain 98 percent attendance. The "# of days available," used in the formula, does not include days an associate spends away from work due to approved Family and Medical Leave Act ("FMLA") leave or approved military leave, protected by the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Pursuant to

---

1. These facts were taken largely from the parties' jointly-submitted Stipulations of Fact.

Defendant's policy, however, time spent away from work for approved military or approved FMLA leaves is not counted as an attendance occurrence, which would negatively affect an associate's attendance percentage.

Under Honda's policy, failure to comply with attendance requirements is a violation of associate standards of conduct, which leads to corrective action, including termination. Honda uses a progressive disciplinary system in which violations of attendance requirements generally result, first, in a Coordinator-level counseling, then, an Associate Relation's-level counseling, and finally a Manager's-level counseling. An associate who has additional attendance occurrences and remains below 98 percent attendance after receiving a Manager's-level counseling is placed on an Attendance Improvement Program ("AIP").

Defendant views its AIP as a behavioral modification device, designed to help the associate improve his attendance habits. The AIP is divided into three two-month segments. During the first two-month segment, the associate is permitted two attendance occurrences. During the second segment, the associate is permitted one unexcused absence. During the final segment, the associate can have no occurrences. Associates who are placed on an AIP are advised in writing that "[f]ailure to comply with the AIP guidelines will result in immediate separation of employment," and Plaintiff was aware of that statement.

It is Honda's policy that absences taken during the period covered by an AIP for Military Leave, FMLA Leave, Medical Leave, Personal Leave, and Educational Leave prolong the AIP by the number of days spent on such leaves. No other type of absence prolongs the AIP, however. Notably, leaves for bereavement, court-appearances and worker's compensation do not extend an associate's AIP.

In October 1999, Plaintiff's attendance percentage was below 98 percent, and he received a Coordinator-level counseling. In the following months, because his attendance remained below 98 percent and he experienced additional attendance occurrences, Plaintiff received both the Associate Relation's-level counseling and the Manager's-level counseling.

After the Manager's-level counseling, Plaintiff's attendance still remained below 98 percent and he had additional occurrences. In accordance with policy, on December 22, 2000, Plaintiff was placed on an AIP, which originally covered the six-month period from December 22, 2000 to June 21, 2001. Importantly, Plaintiff's use of approved FMLA and military leaves prior to December 22, 2000 did not cause him to be counseled or to be placed on the AIP, because none of his approved leaves were attendance occurrences, as defined under Defendant's policies.

During the initial six-month period of his AIP, however, Plaintiff did take approved military and FMLA leaves. After returning from each instance of approved leave, Plaintiff was returned to his prior position.[2] Plaintiff's use of military and approved FMLA leave did not violate his AIP. Nevertheless, as a result of the time

---

**2.** All days designated by Defendant as military leave during the initial six-month period of Plaintiff's AIP were qualified military leaves for purposes of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). All days designated by Defendant as leave covered by the FMLA during the

initial six-month period of the AIP were qualified leave under the FMLA. Defendant does not dispute the qualified nature of Plaintiff's military leave and FMLA leave days during the period of his AIP. Honda, nevertheless, extended the duration of Plaintiff's AIP by the amount of days he took for those leaves.

Schmauch spent on military and FMLA leave, the duration of his AIP was prolonged to August 11, 2001.[3] Those additional days represented the number of days Schmauch took for military and FMLA leaves during the period from December 22, 2000 to June 27, 2001.

On August 7, 2001, while Plaintiff was still on the prolonged AIP and within the final segment when he was not permitted to have any occurrences, Plaintiff had an attendance occurrence. By "attendance occurrence," it is conceded by both parties that Plaintiff was not exercising his right to military or FMLA leaves on that date. Both parties agree, however, that the initial time period of the AIP would have expired on June 21, 2001, and Plaintiff would not have been on the AIP as of August 7, 2001, but for the fact that his AIP was prolonged due to FMLA and military leave time taken by Plaintiff during the initial AIP period.

Defendant's decision to terminate Plaintiff, however, was based solely on the fact that Plaintiff had an attendance occurrence on August 7, 2001, during the final segment of his AIP. Honda terminated Plaintiff on August 10, 2001, after an investigation in which Defendant determined Schmauch had violated his AIP by the attendance occurrence on August 7, 2001.

Plaintiff's sole claim under the FMLA and USERRA is that Defendant violated both statutes by prolonging his AIP due to the amount of time he spent on military and FMLA leaves during the initial period of his AIP, such that his August 7, 2001 attendance occurrence became cause for his termination under the terms of the AIP.

## III. PROCEDURAL HISTORY

Plaintiff filed his Complaint in this Court on August 1, 2002. On September 9, 2002, he filed his First Amended Complaint. It alleges three counts against Defendant: a violation of the FMLA, a violation of USERRA, and a violation of Ohio public policy. On February 7, 2003, Defendant moved for Judgment on the Pleadings with respect to Plaintiff's Ohio public policy claim. This Court granted Defendant's motion on September 16, 2003. Prior to that Opinion and Order, however, both parties filed for Summary Judgment on June 5, 2003. The Motions have been fully briefed, and oral argument on the Motions was heard November 7, 2003.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

To prevail, the movant must establish that there are no genuine issues of material fact. This task may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382,

---

**3.** The parties further stipulate that Plaintiff signed a form memorializing the new dates covered by the AIP and was given a copy of the form. It stated that Plaintiff could not have any attendance occurrences until August 10, 2001, and Schmauch stipulates that he understood that if he had any attendance occurrence before August 10, 2001, he would be separated.

1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). The nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Finally, the mere existence of a scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## V. ANALYSIS

### A. Family and Medical Leave Act

#### 1. Introduction

The FMLA provides, in pertinent part: It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. 29 U.S.C. § 2615(a)(1). In addition, the statute's implementing regulations state, "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b) (emphasis added).

In its Motion for Summary Judgment, Honda alleges that whether Plaintiff's claim is under either § 2615(a)(1) or § 2615(a)(2),[4] Schmauch cannot prove a violation of the FMLA. Defendant argues

Plaintiff has not asserted a right under the FMLA with which Honda interfered or restrained. Defendant further asserts that Plaintiff cannot meet the requirements of 29 U.S.C. § 2617(a) to show damages because the causal chain he suggests is too attenuated. Schmauch was terminated because of an attendance occurrence not protected by the FMLA, which proves, according to Honda, that the extension of Plaintiff's AIP did not directly "cause Plaintiff to suffer compensable harm."

Plaintiff moves for summary judgment on the issue of liability only. He argues that because he would not have been terminated but for the extension of his AIP, which was done solely because of the FMLA and USERRA leaves he took, Honda violated these statutes. Plaintiff argues several theories upon which he claims Honda violated the FMLA. He cites to the implementing regulations and argues Defendant violated them by using his FMLA leave as a "negative factor" against him. Next, Plaintiff contends that the regulations require employers to treat employees on FMLA leave as if they are "present at the workplace for purposes of attendance and related terms and conditions of employment." Finally, Schmauch urges this Court to adopt, for purposes of the FMLA, precedent under the National Labor Relations Act ("NLRA") prohibiting employer's actions that "tend to chill" exercise of protected rights. If so, then Honda's extension of AIPs for FMLA leave violates the statute because it has such a "chilling effect."

#### 2. Interference With or Restraint of FMLA Rights

 Plaintiff took FMLA leave that Honda approved. Schmauch has established, and Defendant does not dispute,

---

4. In Plaintiff's Response to Defendant's Motion, Plaintiff concedes that he is not alleging a violation under § 2615(a)(2), so the Court will not discuss further Defendant's arguments relating to § 2615(a)(2).

that because he took FMLA leave, Honda extended his AIP by the duration of that leave. As a threshold matter, the Court rejects the argument that Plaintiff has not alleged any right protected by the FMLA simply because Honda did not deny Schmauch's requests for FMLA leave. As explained by the Fifth Circuit, "employers have a prescriptive obligation under the FMLA—they must grant employees substantive rights guaranteed by the FMLA—*and they have a proscriptive obligation—they may not penalize employees for exercising these rights.*" *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir.1999) (emphasis added); *accord Taylor v. Union Institute*, 30 Fed. Appx. 443, 451–52 (6th Cir. Feb.19, 2002) (unpublished); *see also Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1139 (7th Cir.2001). Because during the AIP an employee is permitted only a limited number of absences and any unexcused absence is cause for termination, extension of an AIP could be deemed penal in nature. Plaintiff has offered sufficient evidence that Defendant's action of extending his AIP may be said to have "penalized" him for exercising his FMLA rights.

 Further, it is obvious from the parties' motions that the plain language of the statute is not especially useful in resolving the issues before this Court. Moreover, the trial court in *Petsche v. Home Fed. Sav. Bank, N. Ohio* frankly recognized, "[b]ecause the FMLA took effect only a few years ago, there is sparse precedent in this Circuit regarding the analysis to be employed on summary judgment in cases brought under the FMLA." 952 F.Supp.

536, 537 538 (N.D.Ohio 1997). Accordingly, in arguing for summary judgment, Plaintiff urges this Court to take the position adopted by the Ninth Circuit that the "preponderance of the evidence" standard, instead of the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden-shifting approach,[5] should be used in deciding cases brought under § 2615(a)(1). *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir.2001). The appropriate framework for analysis of claims under § 2615(a)(1) has yet to be settled by the Sixth Circuit. *See Hoge v. Honda of America Mfg.*, 2002 WL 485028, *5 (S.D.Ohio Feb.14, 2002) (noting that "[w]hile the Sixth Circuit has not addressed the analysis to be used for a purported violation of [§ 2615(a)(1) ], other courts have concluded that the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green* does *not* apply to § 2615(a)(1) claims.") (citation omitted) (citing *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711 (7th Cir. 1997); *Bachelder*, 259 F.3d 1112; *Hunt v. Rapides Healthcare Sys., LLC.*, 277 F.3d 757 (5th Cir.2001)) (emphasis added).

In *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 315 (6th Cir.2001), the Sixth Circuit adopted the *McDonnell Douglas* burden-shifting analysis for cases of "retaliatory discharge" under the FMLA, where a plaintiff relies on indirect evidence. *See also Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003); *Swanson v. Senior Res. Connection*, 254 F.Supp.2d 945, 951 (S.D.Ohio

---

**5.** Under the *McDonnell Douglas* framework, the burden of proof alternates between the parties. First, a plaintiff alleging discrimination must establish a *prima facie* case of discrimination. Once the plaintiff does that, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action at issue. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is false. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817).

2003). But, it is not clear in *Skrjanc* whether the plaintiff was alleging his FMLA retaliatory claim under § 2615(a)(1) or § 2615(a)(2). Consequently, it cannot be said that the Sixth Circuit meant to decide the precise issue of whether the burden-shifting framework should apply to claims under § 2615(a)(1).

The confusion in this area is exacerbated by the fact that many courts use the terminology of "retaliation" very loosely in FMLA cases, such that it is not clear under which section a plaintiff is bringing his claim when the courts refer to it as one sounding in "retaliation." Some courts, for example, generically refer to § 2615(a)(1) claims as "retaliatory," *see, e.g., Swanson v. Senior Res. Connection,*[6] whereas other courts have used the language of "retaliation" to describe claims under § 2615(a)(2). *See, e.g., Bachelder,* 259 F.3d at 1125, n. 11 (stating, "the 'anti-retaliation' provisions of FMLA prohibit '[discrimination] against any individual for opposing any practice made unlawful by this subchapter,' (a)(2) ...." (citation omitted)). Although one district court in Ohio was confronted with the precise issue and held that *McDonnell Douglas* did apply to an interference claim under § 2615(a)(1), it even stated:

[T]his Court, absent further direction from the Sixth Circuit, agrees that this [sic] an appropriate, *but not perfect,* framework within which to analyze claims under the FMLA. That is, where the plaintiff lacks direct evidence of the employer's intent to interfere with, restrain, or deny an employee the exercise of, or the attempt to exercise, any right provided under the FMLA, the court

uses the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*Petsche v. Home Fed. Sav. Bank, N. Ohio,* 952 F.Supp. 536, 537–38 (N.D.Ohio1997) (emphasis added).

The problem with imposing a burden-shifting analysis on FMLA claims, however, is that the anti-discrimination statutes under which *McDonnell Douglas* developed are distinguishable from the FMLA. In *Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 712 (7th Cir.1997), the Seventh Circuit explained this difference:

The question in a discrimination case is whether the employer treated one employee worse than another on account of something (race, religion, sex, age, etc.) that a statute makes irrelevant. A firm may treat all employees equally poorly without discriminating. A statute such as the FMLA, however, creates substantive rights. A firm must honor statutory entitlements.

*Id.* It cautioned, "[a]pplying rules designed for anti-discrimination laws to statutes creating substantive entitlements is apt to confuse, even if the adaptation is cleverly done." 131 F.3d at 712. While recognizing that the FMLA does have an anti-discrimination component (§ 2615(a)(2)), the *Diaz* court also appropriately noted that not all claims by plaintiffs will fit that mold. *Id.* at 713. It was for those reasons that the *Bachelder* court rejected the burden shifting approach:

The regulation promulgated by the Department of Labor, 29 C.F.R. 825.220(c) plainly prohibits the use of FMLA-pro-

---

**6.** In *Swanson,* the court explained, "[t]he law prohibits an employer from denying an employee the right to exercise her rights thereunder, *id.* § 2615(a)(1), and has been construed to prohibit, among other things, retaliation against an employee for her at-

tempt to take such leave." 254 F.Supp.2d at 951 (citations omitted). The *Swanson* court went on to cite *Skrjanc,* however, in support of applying the *McDonnell Douglas* burden-shifting framework. *Id.* at 951–52.

tected leave as a negative factor in an employment decision. In order to prevail on her claim, therefore, [plaintiff] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both. No scheme shifting the burden of production back and forth is required. 259 F.3d at 1125. Likewise, for all the aforementioned reasons, this Court finds that the "preponderance of the evidence standard" is a preferable framework to use in analyzing claims under § 2615(a)(1) of the FMLA.

The parties' arguments about how to label Schmauch's claim are irrelevant. Defendant's conduct here may be labeled as "discrimination," "retaliation," "interference," or any other host of descriptors, but if Plaintiff proves it contravened the Act or the regulations, Defendant will be found to have violated the FMLA, regardless of the word chosen to describe Honda's actions. There simply is no need for a burden-shifting framework because an employer can violate the FMLA even if it does not "discriminate" against an employee and treats all employees alike.

Schmauch's claim is not that Honda "discriminated" against him by denying his FMLA leave or discharged him solely because he took it, without more. Schmauch argues that but for his taking of FMLA leave, which resulted in the extension of his AIP, his attendance occurrence on August 7, 2001 would not have been sufficient cause for his termination under Honda's policies. In the language of *Diaz,* Schmauch's entitlement to FMLA leave was not respected because, unlike Honda's treatment of other leaves, it used Plaintiff's FMLA leave to extend his AIP.

### 3. Regulations and the "Preponderance of the Evidence" Standard

Given the Court's adoption of the preponderance of the evidence standard, because regulation § 825.220(b) provides that "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act," Schmauch can prove an FMLA violation if he shows by a preponderance of the evidence that Honda violated either the Act itself or one of the regulations. For this case, there are two applicable regulations. The first is § 825.220(b), which describes various ways an employer can "interfere" with the exercise of an employee's FMLA rights, which "include, for example, not only refusing to authorize FMLA leave, *but discouraging an employee from using such leave.*" 29 C.F.R. § 825.220(b). That language is unequivocal. Schmauch, therefore, can prove an FMLA violation by demonstrating, by a preponderance of the evidence, that Honda acted to discourage him from taking FMLA leave.

Under Honda's policies, when an associate is on an AIP, an unexcused attendance occurrence is cause for his termination. In this way, being on an AIP keeps an associate's job in peril. By using his FMLA leave as the sole basis for extending his AIP, it is arguable that Honda discouraged Schmauch from taking it.

Honda cannot succeed on summary judgment merely by pointing out that it never denied Plaintiff's request for FMLA leave, even during his AIP. That is not Schmauch's claim. Rather, he argues that the extension of his AIP, alone, violates the statute because it "interferes with" or "restrains" his exercise of FMLA rights by discouraging him from taking leave provided by the statute. On that issue, for reasons already stated, Plaintiff has presented

a genuine issue of material fact as to whether Honda's extension of his AIP discouraged him from taking FMLA leave, in violation of § 825.220(b).

Honda's differential treatment of the various types of leaves further supports Plaintiff's argument that Defendant discourages associates from taking FMLA leave. The fact is that Honda does not prolong an associate's AIP for absences due to court appearances, worker's compensation and bereavement; hence, its claim that it "simply held plaintiff to the same behavioral standards it applied to other associates" is belied by the evidence.

In addition, as explained by the *Diaz* court, "the [employer] may not defend by saying that it treated all employees identically. The FMLA *requires an employer to accommodate* rather than ignore particular circumstances." 131 F.3d at 712 (emphasis added). Schmauch avers that Honda did not accommodate his particular circumstances, and, in fact, the evidence before this Court suggests Defendant treated Schmauch differently and more negatively by extending his AIP solely because he took FMLA leave. In contrast, Honda concedes that an associate's AIP would not have been extended, for example, if he was absent due to a court appearance. Thus, Schmauch has presented a genuine issue of material fact about whether Defendant's disparate treatment of leaves discourages employees from taking their FMLA, federally protected leave.

■ The second applicable regulation is 29 C.F.R. § 825.220(c), which states:

An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would · be required to be provided to an employee on unpaid FMLA leave. By the same token, *employers cannot use the taking of FMLA leave as a negative factor* in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c) (emphasis added). Indeed, in *Pharakhone v. Nissan North America, Inc.*, 324 F.3d 405 (6th Cir.2003), the court recognized that, "[i]f the employee cannot show that he was discharged because he took leave—*or at least that his taking of leave was a 'negative factor' in the employer's decision to discharge him*—he cannot show a violation of the FMLA." *Id.* at 408 (citing *Bachelder*, 259 F.3d at 1131) (emphasis added). Here, Honda's policy suggests that Defendant uses FMLA leave as a negative factor when it terminates an employee on an AIP for an attendance occurrence that would otherwise not have been cause for his termination were his AIP not prolonged due to FMLA leave.

Defendant, on the other hand, argues for a narrow construction of the language in regulation § 825.220(c). Defendant urges that § 825.220(c) does not apply to this case because Schmauch is not asserting a "discrimination" claim but rather an "interference" claim under § 2615(a)(1). However, the Court already explained why labels such as "discrimination" versus "interference" are unnecessary and confusing, and, at any rate, this Court agrees with the *Bachelder* court that regulation § 825.220(c) applies to the broader language of "interference and restraint" in § 2615(a)(1). 259 F.3d at 1124–25 (stating, "there is no doubt that 29 C.F.R. 825.220(c) serves, at least in part, to implement the interference with the exercise of rights section of the statute").

29 U.S.C. § 2615(a)(2) prohibits an employer from retaliating or discriminating

against an employee who opposes the employer's violation of the FMLA. Consequently, if § 825.220(c) were held to implement § 2615(a)(2) only, employers could not use FMLA leave as a negative factor against an employee who opposes the employer's FMLA violation. The employer, however, *would be free* to use FMLA leave as a negative factor against employees who decline to oppose the employer's unlawful practices. Such a result would be illogical and indefensible.

Finally, regardless of what one chooses to call the employer's behavior, the regulations are unambiguous that *"[a]ny violations ... of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act,"* and those same regulations prohibit employers from using the taking of FMLA leave as a "negative factor in employment actions ... or disciplinary actions." 29 C.F.R. §§ 825.220(b) and (c) (emphasis added). Thus, whether Honda's conduct is labeled as "discouraging an employee from using such leave," as proscribed by § 825.220(b), or using FMLA leave as a "negative factor" under § 825.220(c), Plaintiff has presented a genuine issue of material fact regarding whether Honda's act of extending his AIP is sufficient to constitute a violation of the FMLA.

That conclusion does not, however, warrant a finding for Schmauch on his Motion for Summary Judgment. It is undisputed that Schmauch was *not* taking FMLA leave on August 7, 2001. The attendance occurrence for which he was terminated was *not* protected. Accordingly, there remains a genuine issue of material fact as to whether the mere extension of an AIP is sufficient, in and of itself, to constitute a violation under the FMLA.

### 4. Damages Under the FMLA

A Plaintiff is required to do more than prove a violation of § 2615 to recover under the FMLA. The Plaintiff must also prove that the § 2615 violation caused him damage in accordance with 29 U.S.C. § 2617. In relevant part, § 2617 provides,

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected—

(A) for damages equal to—

(I) the amount of—

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee *by reason of the violation;* or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee *as a direct result* of the violation . . . .

*Id.* (emphasis added). In accord, the Sixth Circuit recently acknowledged:

Even when an employee proves that his employer violated § 2615, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation,"

§ 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 726–27 (6th Cir.2003) (citing *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 88–90, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002)).

*Cavin's* in-depth discussion of the requirements of § 2617 effectively nullifies Defendant's arguments that Schmauch may not recover due to the lack of a cognizable harm resulting from the alleged

FMLA violation. Defendant argues that even if Schmauch could prove a violation under § 2615, his claim must fail because "plaintiff clearly did not suffer lost compensation or benefits 'by reason of' the AIP being prolonged, nor did he sustain 'monetary losses ... as a direct result' of that action." The *Cavin* court, however, found that the examples of ways an employer can "interfere with" or "restrain" employees' FMLA rights stated in § 825.220(c) "suggest that employment actions affected by such considerations *are cognizable harms* under § 2617." *Id.* (emphasis added).

Likewise, Defendant's argument that a plaintiff could not satisfy § 2617 if he "suffered direct harm only as a result of [an alleged violation *not* before the Court] is unavailing in light of *Cavin.*[7] *Id.* The *Cavin* court found that it was enough, under § 2617, for the alleged FMLA violation to have been "a negative factor" in the employer's decision to terminate the plaintiff.

*Cavin* cited the language of § 825.220(c) proscribing employers from using FMLA leave as a "negative factor" and the *Bachelder* court's adoption of the preponderance of the evidence standard in support of its conclusion that " 'a termination based *only in part* on an absence covered by the FMLA, *even in combination with other absences,* may still violate the FMLA.' " *Id.* (emphasis added) (citing *Barnett v. Revere Smelting & Refining Corp.,* 67 F.Supp.2d 378, 388 (S.D.N.Y.1999)).

Arguably, the extension of Schmauch's AIP was "*a* negative factor" because were it not for the extra days added for taking

FMLA leave during the AIP period, Schmauch's unprotected attendance occurrence on August 7, 2001 would not have caused his termination. Consequently, as the *Cavin* court found, Schmauch has presented a genuine issue of material fact as to whether he was harmed merely by the extension of his AIP. Defendant cannot succeed on its own Motion or defeat Plaintiff's Motion by arguing it terminated Schmauch solely because of his August 7, 2001 attendance occurrence. Such argument only begs the issue of *why* Plaintiff was still on the AIP on August 7, 2001.

Defendant's response to *Cavin* is that it is impossible to conclude that the extension of the AIP even was "*a* negative factor," because Honda treats all employees the same. The evidence, however, belies Defendant's contention because Honda treats certain types of leaves differently than others. Moreover, as explained in *Diaz,* Defendant's implied argument that it does not discriminate is inconsequential because "claims under the FMLA do not depend on discrimination.... A statute such as the FMLA ... creates substantive rights. [An employer] must honor statutory entitlements ... [and] may not defend by saying that it treated all employees identically. *The FMLA requires an employer to accommodate rather than ignore particular circumstances.*" 131 F.3d at 712 (emphasis added).

Defendant compares Schmauch to the plaintiff in *Pharakhone v. Nissan North America, Inc.* and argues that both employees were discharged because they violated company policies, not because they

---

**7.** Defendant's argument here is similar to the defendant's argument in *Cavin*, with which the appeals court disagreed. In *Cavin*, Honda attempted to defeat the claim under § 2617 by arguing it terminated Cavin for alleged violations which Cavin chose not to challenge. In his original complaint, for which the district court granted summary judgment in favor of Honda, Cavin had asserted other alleged violations of the FMLA. However, he chose to simplify his appeal by challenging the district court's grant of summary judgment regarding only Honda's denial of FMLA for days he missed work in June 1999.

took FMLA leave. There is a crucial distinction, however, between *Pharakhone* and the facts before this Court. In *Pharakhone*, the Sixth Circuit determined that there was no evidence that the defendant had an ulterior motive. 324 F.3d at 408. In contrast, here, a jury could believe that Defendant's disparate treatment of leaves, using some to extend an AIP (including FMLA leave) but not others, is evidence of an ulterior motive to discourage employees from taking FMLA leave. It is for a jury to decide whether that constitutes a violation of § 2615(a)(1), and whether extension of his AIP, alone, directly resulted in harm to Schmauch as required by § 2617.

Finally, Defendant's reliance on *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), to support summary judgment on the issue of damages is unpersuasive, because the Supreme Court's concern in *Ragsdale* is not implicated in this case. There, the Supreme Court found that one of the regulations promulgated by the Secretary of Labor was beyond the Secretary's authority and contrary to the FMLA because the regulation "relieve[d] employees of the burden of proving any real impairment of their rights and resulting prejudice." 535 U.S. at 90, 122 S.Ct. 1155. Neither party has made that allegation about any of the regulations at issue in this case, nor could they. On the contrary, the two regulations in § 825.220, (b) and (c), are examples of ways that employees can prove impairments of their rights, not circumvent the requirement that they do so. Furthermore, this Court already determined that Plaintiff has presented a genuine issue of material fact regarding whether Defendant violated § 2615(a)(1), so there is no validity to any contention that Plaintiff is being allowed "to bring suit under § 2617, despite [his] inability to show that [defendant's] actions restrained [his] exercise of FMLA rights," as was the case in *Ragsdale.*

In *Ragsdale,* the Supreme Court made clear that under the FMLA, an employee cannot get relief unless he has been "prejudiced by the violation." A reasonable jury could conclude that Defendant's act of extending Schmauch's AIP prejudiced Plaintiff by keeping his job in peril.

Just because a reasonable jury could reach such a conclusion, however, does not necessitate a finding of summary judgment for Plaintiff. It is undisputed that the attendance occurrence for which Schmauch was terminated was *not* protected by the FMLA. Thus, even if a reasonable jury concluded that the extension of his AIP was a violation of the FMLA, that jury could find, nevertheless, that the extension alone did not cause Plaintiff to suffer any monetary losses. Alternatively, a reasonable jury could find that Plaintiff suffered losses "by reason of" the extension of his AIP because, were it not for the extension, Plaintiff's August 7, 2001 attendance occurrence would not have been cause for his termination.

For all the aforementioned reasons, both Plaintiff's and Defendant's Motions for Summary Judgment are **DENIED** as to the FMLA claim.

### B. Uniformed Services Employment and Reemployment Rights Act

#### 1. Introduction

▇▇▇▇ USERRA "prohibits discrimination against military veterans on the basis of their military service and attempts to minimize the disadvantages to their civilian careers as a result of such service." *Curby v. Archon,* 216 F.3d 549, 556 (6th Cir. 2000). "Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." *Hill v. Michelin N. Am., Inc.,* 252 F.3d 307, 312–313 (4th Cir.2001) (citing to *Coffy v. Republic Steel Corp.,* 447

U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980), wherein the Supreme Court noted that USERRA's antecedent statute was "to be liberally construed for the benefit of the returning veteran.").

Plaintiff alleges that Honda violated § 4311 of USERRA. 38 U.S.C. § 4311. Congress enacted that section in response to the Supreme Court's decision in *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), where the Court "held that USERRA's antecedent, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 'was enacted for the significant but limited purpose of protecting the employee-reservist against discriminations like discharge and demotion, motivated *solely by* reserve status.'" *Curby*, 216 F.3d at 556 (emphasis added) (citing *Monroe*, 452 U.S. at 559, 101 S.Ct. 2510). After *Monroe*, Congress enacted § 4311 to clarify that a violation of USERRA occurs even when an employee's exercise of military leave rights is just "*a* motivating factor" in the employer's action. As explained in *Curby*, "Congress intended to lessen, but not eliminate, a veteran's obligation to show that the employer's adverse decision was related to his or her service in the armed forces." 216 F.3d at 557. Moreover, Congress, with subsection (c), gave employers a defense if they can show that they would have taken the same action, notwithstanding their employee's military leave.

Schmauch claims that Honda violated both §§ 4311(a) and (b) by denying him a "benefit of employment" on the basis of his military service and using his military leave as a "motivating factor" [8] in the decision to extend his AIP. Defendant argues that Plaintiff cannot prove he was denied a "benefit of employment" based on his military leave because he was restored to his same position upon returning from each of the leaves, which Defendant approved. Defendant claims that Plaintiff's termination cannot, in any way, be found to have been motivated by his military leaves.[9]

Moreover, Defendant argues that Plaintiff has not met the requirements of Section 4311(b) since there is no evidence that Defendant discriminated against Plaintiff or took an "adverse employment action" against him because he "exercised a right provided for" under USERRA. As with the FMLA claim, Defendant maintains that Plaintiff did not suffer any loss of wages or a benefit "by reason of" a violation of USERRA, which prevents Plaintiff from recovering under the statute. *See* 38 U.S.C. § 4323(d)(1)(B). Honda claims that Schmauch's loss was caused by his violation of the AIP, an occurrence that had nothing to do with his military leave.

### 2. Benefit of Employment

Under USERRA, "[a] person who is a member of [the military] shall not be de-

8. Plaintiff argues that Defendant denied him a benefit of employment by using his military leave "as a motivating factor" in increasing the duration of his AIP. However, given that Defendant concedes that its *sole* reason for extending Plaintiff's AIP was because of the time Plaintiff took for FMLA and military leaves, this issue is moot. Hence, it is not necessary for the Court to decide (or the Plaintiff to argue, for that matter) whether there is a genuine issue of material fact regarding § 4311(c).

9. Here, yet again, is an illustration of the parties' inconsistency in describing this claim. Plaintiff's sole contention under the FMLA and USERRA is that Defendant violated those statutes *by extending his AIP*. Schmauch does not allege that his termination violated either statute, per the parties' Stipulations of Fact and the majority of statements in the parties' Motions. Therefore, consistent with the Stipulations of Fact, this Court is considering only the issue of whether Plaintiff's claims survive summary judgment where the alleged adverse action taken by the Defendant was the extension of Plaintiff's AIP only.

nied ... any benefit of employment by an employer on the basis of that membership, ... performance of service, ... or obligation." 38 U.S.C. § 4311(a). To show a violation of § 4311(a), Plaintiff must establish that he was denied a "benefit of employment." USERRA defines a "benefit of employment" as "any advantage, profit, privilege, gain, status, account, or interest ... that accrues by reason of an employment contract or agreement...." 38 U.S.C. § 4303(2).

To satisfy this element, Plaintiff claims he was denied the "advantage, privilege, gain or status" of extinguishing his AIP on the original designated date. To determine whether Defendant denied him a "benefit of employment" by extending his AIP, Plaintiff asks the Court to rely on *Rogers v. San Antonio,* 211 F.Supp.2d 829, 839 (W.D.Tex.2002), which held that courts should consider whether the person absent on military duty was treated as if he was present at work. To decide whether Plaintiff has satisfied this element, however, it is not necessary for this Court to hold that USERRA requires employers to treat employees who are on military leave as if they are at work. No more is needed than the plain language of the statute.

A "benefit of employment" includes an "advantage" or "privilege" accrued by reason of an employment contract. A reasonable jury could find the employment relationship between Schmauch and Honda is an "employment contract," and it is an "advantage" or "privilege" to be able to extinguish one's AIP because, plainly, the quicker an associate does so, the less time he is in peril of losing his job for an unexcused attendance occurrence. Here, if Schmauch's AIP had expired on June 21, 2001, his August 7, 2001 attendance occurrence would not have been cause for his termination. Thus, the "extinguishment of an AIP" may constitute a "benefit of employment," as defined under USERRA.

Honda defends its action by claiming that if it did not extend Schmauch's AIP, it would have been according Plaintiff "special treatment." But that simply is not true in light of the fact that employees on AIPs who took leave for a court appearance, for example, did not have their AIPs extended. Honda admitted at oral argument that if this Court had called upon one of its associates for jury duty, the days that associate would spend at the courthouse would not be added to the associate's AIP. Honda acknowledged that, under its policies, the juror/associate's AIP would not be extended even if the length of jury duty were comparable to the number of days Schmauch took for military leave.

Defendant has not offered to this Court a satisfactory explanation for why it treats associates differently depending on which sovereign—the judicial branch or the executive branch—calls upon them. The Court does not believe there is a justifiable distinction. Both military leave and jury duty are compulsory, beyond the control of the employee, and may last for a comparable amount of time.

Arguably, the employees called upon for jury duty receive special treatment, not associates like Schmauch, who are called upon to serve their country. Looked at another way, in *Rogers* the court found that because the reservists were not given the opportunity to "make up" the unscheduled overtime missed while away on military duty, they were penalized and denied a "benefit of employment." 211 F.Supp.2d at 837. The non-reservist employees in *Rogers* gained an advantage over the reservist employees because they were able to accumulate overtime while reservists were away. Here, Honda's non-reservist employees, likewise, gained an advantage. While Plaintiff was on military leave, they were able to eliminate the remaining days of their AIPs. A reasonable jury could

conclude that Honda "penalized" Schmauch by adding his military leave days to his original AIP period, which, arguably, is a disciplinary program, especially in light of the fact that an associate would not be similarly penalized for jury duty.

### 3. Motivating Factor

Plaintiff also claims that Defendant violated USERRA by using his military leave as a motivating factor in the decision to extend his AIP. *See* 38 U.S.C. § 4311(c)(1). However, it is not necessary for Plaintiff to prove such a motivating factor because Defendant does not contest that the *sole* reason it extended Plaintiff's AIP was because of his military and FMLA leaves. Therefore, under § 4311(a), the only relevant issue is whether the extinguishment of an associate's AIP is a "benefit of employment" that Plaintiff was denied.

### 4. Adverse Employment Action

Under Section 4311(b) of USERRA, "[a]n employer may not discriminate in employment or take any adverse employment action against any person because such person ... exercised a right provided for in this chapter." 38 U.S.C. § 4311(b). Plaintiff does not claim he was "discriminated in employment,"[10] but rather that Defendant took an "adverse employment action" against him, by extending his AIP because of his military leave.

■■■ USERRA does not define "adverse employment action." Plaintiff claims it should be interpreted to include the denial of a "benefit of employment," such that if a jury finds extinguishment of an AIP is a "benefit of employment," Honda could be found to have taken an "adverse employment action" against Schmauch by not allowing him to eliminate his AIP while on military leave. Conversely, Defendant

relies on *Beck v. Prupis*, 529 U.S. 494, 500–01, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000), in which the Supreme Court reiterated the fundamental tenet of statutory construction that,

> when Congress uses language with a settled meaning at common law, Congress "presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them."

529 U.S. 494, 500–501, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000) (citing *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). Because Congress did not define "adverse employment action" in USERRA as it did, for example, with "benefits of employment," the Court must look to commonly-accepted definitions for guidance.

■■■ The phrase "adverse employment action" is a term of art within employment discrimination law. Section 4311(b) of USERRA is aimed at prohibiting employer discrimination—"An employer may not discriminate in employment against...." 38 U.S.C. § 4311(b). In the Sixth Circuit, an "adverse employment action" is a "materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct." *Policastro v. N.W. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir.2002) (citing *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). The Sixth Circuit adopted the Seventh Circuit's explanation of what constitutes a "materially adverse change." *See,*

---

**10.** Plaintiff stipulated that he "is not aware of any Honda associate or supervisor expressing any disapproval of his taking military leaves, and he does not feel that he was treated negatively by Honda as a result of his military service."

*e.g., Ford v. Gen. Motors Corp.,* 305 F.3d 545, 553 (6th Cir.2002); *Hollins v. Atl. Co., Inc.,* 188 F.3d 652, 662 (6th Cir.1999). In *Crady v. Liberty National Bank & Trust Co. of Indiana,* 993 F.2d 132 (7th Cir. 1993), the Seventh Circuit explained,

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, *a material loss of benefits,* significantly diminished material responsibilities, *or other indices that might be unique to a particular situation.*

*Id.* at 136 (emphasis added). A "materially adverse change" then, does include loss of benefits, although to be an "adverse employment action," the loss must be "material." Thus, as noted, if the extinguishment of an AIP is determined to be a "benefit," a reasonable jury could conclude that Plaintiff suffered a *material* loss of benefits as a result of his military leave because Defendant prolonged Plaintiff's AIP solely because he took military (and FMLA) leave.

Finally, the facts of this case also could fall under the "other indices" indicator of a "materially adverse change." It may present the "particular situation" contemplated by the *Crady* court. Honda's disciplinary program is unique in its multi-tiered approach, culminating in the AIP. The AIP, as a "behavioral modification device," requires an employee to demonstrate over a six-month period that his attendance has improved and allows only a certain limited number of absences during each two-month segment. By extending his AIP

because of the time Schmauch took on military leave, a jury might reasonably conclude that Honda affected a "materially adverse change" in Plaintiff's terms and conditions of employment.

### 5. Damages Under USERRA

Under Section 4323(d)(1), "the court may require the employer to comply with the provisions of this chapter" or "[t]he court may require the employer to compensate the person for any loss of wages or benefits suffered *by reason of* such employer's failure to comply with the provisions of this chapter." 38 U.S.C. § 4323(d) (emphasis added). The "by reason of" language under USERRA is the same as that used in 29 U.S.C. § 2617 of the FMLA. Therefore, for all of the aforementioned reasons elucidated under the damages section of the FMLA discussion, there is a genuine issue of material fact regarding whether Plaintiff suffered damages merely by reason of Defendant's extension of his AIP.

## VI. CONCLUSION

Based on the foregoing analysis, the Court **DENIES** both Plaintiff's and Defendant's Motions for Summary Judgment on both the FMLA and USERRA claims.

**IT IS SO ORDERED.**