Angel A. VEGA COLÓN, Plaintiff,

v.

**WYETH PHARMACEUTICAL,**
**Defendants.**

**Civil No. 07–2090 (FAB).**

United States District Court,
D. Puerto Rico.

May 1, 2009.

Anibal Escanellas–Rivera, Escanellas & Juan, San Juan, PR, for Plaintiff.

Juan F. Santos–Caraballo, Maria Antongiorgi, McConnell Valdes, San Juan, PR, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

This case comes before the Court upon the objections of both parties to Magistrate Judge Bruce McGiverin's report and recommendation, which granted in part and denied in part the defendant's motion for summary judgment.

## PROCEDURAL HISTORY

Plaintiff Angel A. Vega Colón ("Mr. Vega") filed this action against his employer, defendant Wyeth Pharmaceuticals Company ("Wyeth") on November 16, 2007 for alleged discrimination based on military service in violation of the Uniformed Employment and Reemployment Rights Act of 1994 ("USERRA"), as amended, 38 U.S.C. § 4301 et seq., and retaliation in violation of USERRA and Law Number 115 of December 20, 1991, as amended, 29 L.P.R.A., et seq. ("Law 115").[1] (Docket No. 1)

On March 4, 2009 Wyeth moved for summary judgment (Docket No. 38), Mr. Vega opposed (Docket No. 49), and Wyeth replied (Docket Nos. 60 and 65). The magistrate judge issued a report and recommendation on April 17, 2009, granting in part and denying in part Wyeth's motion for summary judgment. Both parties filed objections to the report and recommendation (Docket Nos. 84 and 85). Those objections are now pending before the Court. For the following reasons, **the Court ADOPTS in part, REJECTS in part the magistrate judge's report and recommendation and DISMISSES this case.**

1. Mr. Vega's claims pursuant to the United States Constitution and Article 1802 of the Puerto Rico Civil Code were previously dismissed. (Docket Nos. 27 and 28)

## FACTUAL BACKGROUND

Because defendants have not made specific objections to the magistrate judge's recitation of the factual background, the Court hereby adopts the facts as stated in the report and recommendation.

## STANDARD OF REVIEW FOR A REPORT AND RECOMMENDATION

 A district court may refer pending dispositive motions to a magistrate judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); FED.R.CIV.P. 72(b); LOC.CIV.R. 72(a). Any party may file written objections to the report and recommendation within ten days of being served with the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1). The party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Felix Rivera de Leon v. Maxon Engineering Services, Inc.*, 283 F.Supp.2d 550, 555 (D.P.R.2003); *see also, Sylva v. Culebra Dive Shop*, 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (*citing United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule waives each party's right to review in the district court. *See Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992); *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985); *Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). In conducting its review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## ANALYSIS

In his report and recommendation, the magistrate judge considered whether there exists a genuine issue of fact with regard to the following alleged USERRA actions: "(1) Wyeth's decision not to select Mr. Vega for the reliability engineer position; (2) Wyeth's placement of Mr. Vega on a Performance Improvement Plan ("PIP") and subsequent extension of that Plan; (3) alleged harassment creating a hostile working environment; and (4) Wyeth's allegedly retaliatory failure to raise Mr. Vega's salary for the years 2007, 2008, and 2009." (Docket No. 81 at 18) With regard to these alleged USERRA actions, the magistrate judge found that a material issue of fact remained only "as to whether Vega's military status was a substantial or motivating factor in Wyeth's decision to extend Vega's Improvement Plan." *Id.* at 22. The magistrate judges recommends dismissing all other alleged USERRA violations, including the plaintiff's claim that Wyeth changed the plaintiff's performance rating in retaliation for filing a charge with Veterans Employment and Training Service division of the Department of Labor ("VETS"). The magistrate judge also recommends dismissing the remaining retaliation claim under Puerto Rico Law 115.

## I. Plaintiff's Objections to the Report and Recommendations

The plaintiff objects to all of the magistrate judge's recommendations.

### A. Reliability Engineer

 First, the plaintiff argues that he successfully established that Wyeth's failure to select him for the position of Reliability Engineer was discriminatory under USERRA, and therefore that the magistrate judge erred in recommending dismissal of this claim. Mr. Vega contends: (1) he was more qualified for the position than Mrs. Ramos (who was selected for the job) because he was the more experienced, educated, and senior candidate; (2)

a statement to which he testified while in deposition (that Quiñones, a supervisor, informed him that he was not selected for the position because of his military status) was improperly excluded as hearsay by the magistrate judge because the statement was simply "from Vega with regards to the discriminatory comment made by Quiñones against him" (Docket No. 84 at 2); and (3) Quiñones, one of those responsible for selecting the person to fill the position, was "constantly, on a daily basis" making "discriminatory and derogatory comments to Vega regarding his military status." *Id.* at 3. Based on these three arguments, Mr. Vega believes he established that he was not selected for the Reliability Engineer Position due to his military status.

This Court finds Mr. Vega's objection unconvincing. He has failed to address, whatsoever, the primary ground on which the magistrate judge recommended dismissing Mr. Vega's claim: "the record does not support a finding that [Mr. Vega] was even covered under USERRA at [the time Wyeth filled the position]." (Docket No. 81 at 19) The report and recommendation explains that because Mr. Vega was inactive and did not attend military training sessions from 2004 through 2006, he was not covered by USERRA during that period. *Id.* It was not until Mr. Vega informed his supervisors in November of 2006 of his intention to return to active military service that the USERRA protections were triggered. *Id.* Mr. Vega's application for the Reliability Engineer position in April 2006 fell outside the period during which he was covered under USERRA. The magistrate judge concluded that "[wh]ile the record does not include the date on which Ms. Ramos was hired for the position, Mr. Vega includes no evidence suggesting that the hiring process somehow dragged on for this entire six-to-seven month period." *Id.*

The Court has independently reviewed the record and concluded that the magistrate judge's analysis is correct: the record does not support a finding that USERRA protections applied to Mr. Vega at the time Wyeth made its selection for the position of Reliability Engineer. Because Mr. Vega's objection fails to dispute this threshold matter—of whether USERRA protections even applied to the plaintiff during the time of the alleged USERRA violation—the arguments made by the plaintiff in his objection are irrelevant. Thus the Court adopts the recommendation of the magistrate judge on this point, and hereby grants Wyeth's motion for summary judgment on Mr. Vega's claim related to the Reliability Engineer position.

### B. Job Performance Rating

■ Mr. Vega also argues that, contrary to the finding of the magistrate judge, he presented evidence sufficient to show that his low job performance evaluation was based on his military status. (Docket Nos. 84 at 3 and 81 at 20) At the outset, the Court notes that Mr. Vega's presentation to this Court fails to properly cite all factual assertions to the record—either to his own pleadings or to any exhibits submitted with any of those pleadings. The result is that the Court has before it only an inconsistently supported narrative of facts that Mr. Vega contends sufficiently substantiate his claim of a USERRA violation. It is black-letter law in the First Circuit that district courts are not required to ferret through records in search for evidence in support of a party's case, *Mercado–Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 51 (1st Cir.2005).

Mr. Vega has also inappropriately used this stage of proceedings to rehash arguments already made at the summary judgment stage. *See Castro–Rivera v. Citi-*

*bank, N.A.*, 195 F.Supp.2d 363, 365 (D.P.R. 2002); *See Sackall v. Heckler*, 104 F.R.D. 401, 402–03 (1st Cir.1984) ("[I]f the magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel, consistent with the [federal rules of civil procedure], can in good conscience complain to the district judge that an objection to a particular finding or recommendation is 'well grounded in fact and is warranted by existing law or . . . reversal of existing law . . .'."). It is not the role of this Court to assess the factual record already adduced by the magistrate judge unless contested specifically.

Although the objection here consists of arguments made already by Mr. Vega, and is based on a record already before the magistrate judge that the plaintiff does not specifically contest, but rather attempts to re-characterize, the Court nevertheless conducted an independent review of these repeated arguments and, in so doing, concurs with the magistrate judge that the record does not support an inference of discrimination related to Mr. Vega's job performance.

Mr. Vega's objection argues that his poor performance rating was the result of his changed status from inactive to active military duty. The "evidence" Mr. Vega believes supports that argument is that the decrease in rating, from 3 to 2, corresponds to his decision to enter into an active military status. What the plaintiff avers, however, does not support such a finding: he states that he "became aware of his rating in the month of January 2007, almost immediately after he informed Quiñones and Inserni [two of his supervisors]

that he was looking [to join in a military unit]." (Docket No. 84 at 3) When Mr. Vega became aware of his poor performance rating is irrelevant; what is relevant is when it was issued. Mr. Vega presents no evidence showing that timing of the decision to rate his performance followed his announcement to return to military duties or training.

Mr. Vega also argues that two of his supervisors, Inserni and Quiñones, both of whom he avers were involved in rating his performance, called him names regarding his military status, the frequency of which is disputed. Mr. Vega asserts that the comments made by Inserni and Quiñones demonstrate their discriminatory animus against Mr. Vega, which led them to rate him lower than he deserved. The Court disagrees with this method of connecting the dots.

First, the magistrate judge found the record as to this issue of alleged name-calling to be a cloudy one,[2] and ultimately determined on the basis of legal precedent and that factually cloudy record, that these comments were "not frequent, severe, threatening, humiliating, or harassing." (Docket No. 81 at 23) Further, the judge determined that "there is nothing in the record to suggest that these comments were threatening and humiliating, only that they made Mr. Vega feel that he was being disparaged and not respected. While no one likes to be disrespected, names like these are not objectively anything more than rude; they do not, as the authority cited by the report and recommendation accurately shows, amount to the kind if discrimination needed to sustain a claim of a hostile work environment under USERRA. Likewise, those comments do not show any causal link between the

---

**2.** See the discussion below, in which the Court adopts the magistrate judge's dismissal of the plaintiff's USERRA claim based on a hostile work environment.

words used and the actions taken by those supervisors on Mr. Vega's job evaluation.

Most importantly, the record contains ample evidence supporting Wyeth's position that Mr. Vega's performance rating was deserved: Mr. Vega's July 31, 2006 "Performance Feedback" document contains an advisement that Mr. Vega should improve his "[l]ack of good communication with some peers," become more involved in various specified aspects of the workplace, and improve efficiency levels in his areas of supervision (Docket No. 81 at 6, citing Docket No. 39) (internal quotation omitted); and the 2006 evaluation ranking Mr. Vega's performance as a level of 2, and which Mr. Vega received in February 2007, "cited issues with a host of conduct." *Id.*

Taken together, these facts do not show that Mr. Vega's protected status was a substantial or motivating factor in the evaluation rating. (See Docket No. 81 at 20) (internal citations omitted). Even were the Court to find, contrary to the report and recommendation, that Mr. Vega meets that initial burden, Wyeth's introduction of evidence showing that Mr. Vega's job poor performance was documented in his written evaluations successfully demonstrates that it would have rated Mr. Vega's performance as a 2 regardless of his military status. None of the facts listed above, however, support Mr. Vega's contention that his performance ranking was due to a discriminatory animus. As the magistrate judge noted, "while there is evidence that Vega disagreed with the score at the time it was given, there is not evidence in the record that the performance rating was undeserved." (Docket No. 81 at 6, citing Docket No. 39, ¶ 62, 15)

Because the Court finds no fault in the magistrate judge's analysis of the facts and law, and after its own investigation of the record, it now adopts by reference the magistrate judge's finding that plaintiff's USERRA claim regarding his job rating of 2 should be dismissed and summary judgment on that claim entered.

## C. Hostile Working Environment

■ Mr. Vega next argues that the magistrate judge erred in his finding that Mr. Vega was not subjected to a hostile working environment. In support of this objection, Mr. Vega states that the comments made to him such as "soldadito" or "sergeant" must be viewed as "severe, pervasive, discriminatory, and offensive" because Mr. Vega would be particularly sensitive to such comments as a member of the military. (Docket No. 84 at 6) Mr. Vega further disputes the magistrate judge's finding that the only comment showing that Mr. Vega was subjectively upset was the supervisor Inserni's reference to "Rambo" which nevertheless was made on only one occasion. (*Id.*; Docket No. 81 at 23–24) Mr. Vega argues that the report and recommendation is incorrect because the record shows that he stated that Inserni constantly referred to Mr. Vega as "Rambo" and "Rambito."

■ This Court rejects Mr. Vega's objection regarding Mr. Vega's on two grounds. First, the plaintiff's objection essentially rehashes an argument already directly refuted in the report and recommendation's analysis. On that ground, alone, this Court ought to reject the plaintiff's objection. A plaintiff may not simply address the same arguments that the magistrate judge considered and expect the Court to treat the filing seriously. *Rosado–Lebron v. Comm'r of Soc. Sec.*, 193 F.Supp.2d 415, 418 (D.P.R.2002) (internal citations omitted). Instead, a plaintiff ought to explain to the reviewing Court, citing proper authority, why the magistrate judge's application of law to facts is legally unsound.

Indeed, Mr. Vega failed even to address the magistrate judge's carefully explained reasoning for rejecting the plaintiff's claim of a hostile work environment in the first place. The report and recommendation cited as authority for its conclusions numerous holdings in which both isolated and *daily* comments and incidents experienced by the plaintiffs in those cases were found: (1) not to rise to severity and persuasiveness needed to sustain a hostile environment charge; (2) to be too mild to form the basis of a hostile environment charge; or (3) not to amount to a workplace permeated with discriminatory intent. (Docket No. 81 at 24) Even were the comments made daily, a fact not well-supported by the record, the case law cited by the magistrate judge does not view daily comments as amounting to workplace hostility where there is no evidence that the comments were objectively or subjectively physically threatening, intimidating, or interfered with work performance. *Id.*

Mr. Vega cites no authority to refute the legal analysis presented in the report and recommendation, nor does he attempt to distinguish the cases relied upon in that analysis in order to refute the magistrate judge's conclusions. Neither does he present any facts showing that the comments interfered with his work performance, or that they were consistency intimidating or threatening. Mr. Vega's objection rests on the self-serving premise that he was especially sensitive to what the magistrate judge, this Court, and the governing case law all have determined does not constitute a workplace of hostility—that because he was a military man, he was affected particularly by the words describing military personnel that were spoken to him while at work.

While the Court has no doubt that such comments might not have been Mr. Vega's favorite nicknames or monikers, it finds it hard to believe that such typically non-pejorative comments as "soldadito" and "sergeant" could be so completely transformed by virtue of the plaintiff's military connections into something derogative and damaging. In any case, this Court finds the magistrate judge's legal reasoning sound. The workplace hostility claim pursuant to USERRA is also hereby dismissed.

### D. Retaliation for VETS Claim and Under Law 115

Mr. Vega argues that the magistrate judge's erred in concluding that the record does not support a finding of retaliation, either pursuant to USERRA or to Puerto Rico Law 115.

The plaintiff brings forth no argument not already considered and addressed by the magistrate judge, and once again this Court must remind the plaintiff that he abuses scarce judicial resources by raising the same arguments without some factual or legal basis to make a well-founded complaint about the magistrate judge's decision. *See Lopez v. Chater,* 8 F.Supp.2d 152, 155 (D.P.R.1998) (specifically admonishing plaintiff's counsel, because the objections "barely complie[d] with the rule's requirements to the objectionable parts of the Magistrate–Judge's report"). As such, the Court finds no reason to disturb the findings contained on this point in the report and recommendation. Plaintiff's retaliation claims are therefore dismissed and summary judgment as to these claims is granted.

### II. Defendant's Objections to the Report and Recommendation

The Court notes, at the outset, that the only remedy that Mr. Vega would be entitled to under USERRA were he to prevail on his single remaining claim that his PIP extension was based upon discriminatory

animus is for the Court to order Wyeth to remove him from the PIP, essentially "reinstating" his prior, pre-PIP status. Mr. Vega confronts an insurmountable procedural obstacle with regard to recovery, however, as he failed to pray for reinstatement in his original complaint (Docket No. 1), instead praying exclusively for damages. Thus, Mr. Vega is left without a remedy, in violation of Federal Rule of Procedure 12(b)(6). On this basis alone, the Court could dismiss the remaining claim. The Court prefers to deal with its merits for the sake of completeness and clarity, however, and proceeds to do so.

■ Defendant Wyeth objects to the report and recommendation's conclusion that an issue of fact remains as to whether Mr. Vega's PIP was improperly extended. Wyeth argues that the record contains evidence sufficient to show that the continuation of Mr. Vega's PIP, the only claim that the magistrate judge did not recommend dismissing, was not due to discriminatory animus. (Docket No. 85 at 2)

The magistrate judge found that Mr. Vega met his initial burden of demonstrating that his military status was a motivating factor in Wyeth's decisions concerning the PIP. (Docket No. 81 at 21) The primary basis on which the magistrate judge made this determination was the fact that Mr. Vega attested that "Espejo," whose role in evaluating Mr. Vega is unclear from the record, informed Mr. Vega "that his participation in the military had negatively affected his Improvement Plan evaluation." *Id.* The magistrate judge next found that Wyeth successfully rebutted Mr. Vega's assertion that his assignment to a PIP was due to his military status; Wyeth was able to show that, based on Mr. Vega's job evaluation rating of 2, the company policy required the commencement of a PIP for Mr. Vega. *Id.*

The magistrate judge nevertheless found Wyeth less convincing regarding Wyeth's contention that its continuation of Mr. Vega's PIP was not motivated by Mr. Vega's military status; Wyeth argues that it would have extended Mr. Vega's PIP even in the absence of his protected status. In support of its argument, Wyeth presented evidence that (1) the PIP was continued because Mr. Vega was on authorized leave for the vast majority of the PIP's duration, (2) Mr. Vega sent a disrespectful email to his supervisor accusing him of lacking leadership and integrity between the closing of his evaluation period and before Mr. Vega was informed of the PIP, and (3) Mr. Vega circulated a letter he prepared attesting to his job performance among his subordinates soliciting their signatures. The magistrate judge determined that, because Wyeth did not directly refute Mr. Vega's averment (that Espejo stated that Mr. Vega's military participation negatively affected his evaluation) and because Wyeth asserted that the PIP was extended because of Mr. Vega's absences, it failed to meet its burden to show by a preponderance of the evidence that it would have extended Mr. Vega's PIP regardless of his military status and that its stated reason was not a pretext. (Docket No. 81 at 22) The Court disagrees with the magistrate judge, and finds now that Wyeth did meet its burden.

The Court agrees with Wyeth's general observation that the First Circuit Court of Appeals has consistently given wide discretion to employers to make their own performance-based decisions. As Wyeth explains, "the focus is on the perception of the employer, and the employee's personal opinion regarding his own job qualifications are irrelevant." (Docket No. 85 at 3) (citing *Rivera Rodríguez v. Sears Roebuck De P.R., Inc.*, 367 F.Supp.2d 216, 228 (D.P.R.2005)) (internal citation omitted). Nevertheless, the Court finds that Wyeth

takes this line of thinking too far, essentially arguing that employers, not courts, are entitled to make all personnel, employment and business decisions. While, broadly speaking, courts have supported this argument, the First Circuit Court of Appeals has made clear that "the issue under USERRA is not whether an employer is 'entitled' to dismiss an employee for a particular reason, but whether it would have done so if the employee were not in the military." *Velazquez–Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 20 (1st Cir.2007). Thus the Court finds that, regardless of Wyeth's perception that it has the freedom to make unfettered personnel decision, it must still show this Court that, by a preponderance of the evidence, it would have extended Mr. Vega's PIP regardless of his military status.

The Court finds that Wyeth has demonstrated that no rational factfinder could find that its actions were pretextual. First, Wyeth clearly shows that it had a preexisting policy of placing employees received a job evaluation rating of 2 or lower on a PIP. (Docket No. 85 at 2) Mr. Vega was therefore properly placed into a PIP program, as discussed above. Second, the Court agrees with Wyeth that the electronic letter sent by Mr. Vega to his supervisor accusing him of lacking leadership and integrity, along with the letter he prepared and solicited his subordinates to sign—during working hours and while he was on notice via the PIP that his behavior needed improvement—both gave Wyeth non-discriminatory motivation for extending Mr. Vega's PIP. Either incident could have led Wyeth to conclude that Mr. Vega's behavioral problems persisted, in contravention of the PIP program's requirement that he correct those problems in order to be reinstated or taken off the program.

Wyeth submits as grounds for extending Mr. Vega's PIP the fact that Mr. Vega was on leave for the majority of the 90 days his PIP program was to have lasted. The magistrate judge found this factor to add weight to the plaintiff's claim that Wyeth's motivation to extend Mr. Vega's PIP program was based on Mr. Vega's military status. As support for this finding, the magistrate judge relied on *Schmauch v. Honda of Am. Mfg.*, 295 F.Supp.2d 823, 838 (S.D.Ohio 2003) (finding that a reasonable jury could find that employer's policy prolonging six-month attendance improvement plan by the number of days spent on military leaves constituted denial of a benefit and adverse action under USERRA where other types of authorized leave did not extend improvement plan).

Wyeth distinguishes *Schmauch* from this case, explaining that the defendant in *Schmauch* had an established policy of extending its improvement plan specifically for each day spent on military leave for FMLA, while other types of leave, such as for bereavement, court-appearance and the like did not extend the improvement plan. In *Schmauch*, Wyeth explains, the issue was whether, when the sole reason for the extension of the plaintiff's extension was military and FMLA leave, USERRA and FMLA were violated. Here, unlike the plaintiff in *Schmauch*, Mr. Vega (1) never alleged that his PIP was extended because of his military leave while other types of employee leave did not provoke similar extensions, and (2) Wyeth has alleged other grounds, besides leave, for extending Mr. Vega's PIP. In addition to the distinguishing facts raised by Wyeth, the *Schmauch* case is not binding on this Court.

Most significantly, the Court views the magistrate judge's reasoning—that the fact that Wyeth stated that its extension of Mr. Vega's PIP creates an inference that

Wyeth may have discriminated against Mr. Vega—to be highly problematic and, simply put, not sensical. As Wyeth correctly points out, such reasoning also puts companies like Wyeth in an untenable position. First, there is no evidence on the record that all of Mr. Vega's leaves were military related. Even assuming, *arguendo*, that all were, Wyeth's established policy makes termination one possible consequence of failing to pass the PIP within the time period established. Because he was on leave, the entire objective for which a program such as Wyeth's PIP is created is to allow poorly performing employees to rectify their behavior and demonstrate their willingness to respond to feedback related to the job performance. If an employee, for any reason, misses nearly all of that program, it makes sense to this Court that the program would be extended such that the number of days (in this case 90) required as a matter of policy to complete the program would be extended (1) to allow the employee to respond to the evaluation given and improve performance as required; (2) to create a sense of fairness among employees similarly placed on PIP or other remedial programs such that one going on leave is not perceived as shirking or escaping or avoiding the liabilities attached to receiving a poor job rating; and (3) to avoid the potentially worse result of job termination, something Wyeth argues it had the right to do as a matter of established policy to any employee who failed to complete his PIP program. While the Court declines to speculate as to whether Wyeth truly gave Mr. Vega a "break" by extending his PIP, the Court views Wyeth's decision to continue Mr. Vega's PIP as reasonable and based on non-discriminatory purposes clearly discernable in the record.

Wyeth has proffered numerous grounds supporting its decision to extend Mr. Vega's PIP, all unrelated to the fact that Mr. Vega was in the military. Accordingly, the evidence refutes, by a preponderance of the evidence, that Wyeth's reasons for its actions toward Mr. Vega were a pretext to discriminate against him. It is evidence that Mr. Vega's PIP extension was inevitable and would have taken place regardless of his military status.

## CONCLUSION

Wherefore, the Court now **ADOPTS** the magistrate judge's findings and recommendations with regard to all claims that the magistrate judge recommends be dismissed, and **REJECTS** it as to the one claim remaining, such that all claims against defendant are now **DISMISSED with prejudice** and summary motion as to all claims is **GRANTED**. Accordingly, Wyeth's summary judgment motion (Docket No. 38) is **GRANTED**. All claims against the defendant are hereby **DISMISSED, with prejudice**.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**